673 F.2d 61
 CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Petitioner,
v.
Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Respondent,
and
Michael Cotter, Intervenor.
 No. 669, Docket 81-4215.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 16, 1981.
Decided March 8, 1982.
 
 Francis B. Conrad, New York City (David J. Reilly and Kenneth R. Shaw, New York City, of counsel), for petitioner.
 Nancy E. Friedman, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., Michael H. Dolinger, Asst. U. S. Atty., New York City, of counsel), for respondent.
 
 
 1
 Arthur Z. Schwartz, Hall, Clifton & Schwartz, New York City, for intervenor.
 
 
 2
 Before TIMBERS and KEARSE, Circuit Judges, and METZNER, District Judge.*
 
 METZNER, District Judge:
 
 3
 Consolidated Edison Company of New York, Inc. (Con Edison) petitions this court to set aside an order by the Secretary of Labor directing the reinstatement of employee Michael Cotter. The Secretary, adopting the recommended decision and order of the Administrative Law Judge (ALJ), determined that Con Edison violated the employee protection provision of the Energy Reorganization Act, 42 U.S.C. § 5851,[1] by discharging Cotter for complaining about nuclear safety hazards in the workplace.
 
 
 4
 The evidence before the ALJ makes clear that we are dealing with a "dual motive" discharge. Con Edison claims that the discharge was justified because Cotter threatened to kill his supervisor, Ferdinand Dorrer.
 
 
 5
 In Wright Line, a Division of Wright Line, Inc., 251 NLRB 1083 (1980), aff'd, sub nom. NLRB v. Wright Line, 662 F.2d 899 (1st Cir. 1981), the NLRB adopted a new test in dual motive discharge cases for determining whether Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1973), has been violated. Under this test,
 
 
 6
 "(T)he General Counsel (must) make a prima facie showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct." (251 NLRB at 1089)
 
 
 7
 This rule was adopted from Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), where the Court said that the burden was properly placed upon the employee to show that his conduct was constitutionally protected, and that such conduct was a motivating factor in the Board's decision not to rehire him. Thereafter, the district court "should have gone on to determine whether the Board (of Education) had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's (employee's) reemployment even in the absence of the protected conduct." This is known as the "but for" test. In other words, the employee would not have been dismissed but for his engaging in protected activity.
 
 
 8
 There is no precedent as to how cases under Section 5851 should be treated, but the legislative history of the section makes clear that recourse may be had to precedent under analogous situations. S.Rep.No.95-848, 95th Cong., 2d Sess. at 29, 1978 U.S.Code Congressional and Administrative News at 7303. The test adopted by the NLRB appropriately should be applied in Section 5851 proceedings.
 
 
 9
 The "but for" test appears to be the rule in this circuit. NLRB v. Charles Batchelder Co., Inc., 646 F.2d 33 (2d Cir. 1981). The court was not concerned with a "dual motive" case, and Wright was referred to only in a passing way. However, Judge Newman, in his concurrence in Batchelder, at page 42, stated that:
 
 
 10
 "When we say an employer has not sustained his burden under the 'but for' test, we mean that he has not proven that he would have acted the same way if only the valid ground had existed."
 
 
 11
 Other circuits have been more definite in adopting the Wright rule. NLRB v. Lloyd A. Fry Roofing Co., Inc. of Del., 651 F.2d 442 (6th Cir. 1981); Peavey Company v. NLRB, 648 F.2d 460 (7th Cir. 1981); NLRB v. Nevis Industries, Inc., 647 F.2d 905 (9th Cir. 1981).
 
 
 12
 On the other hand, the First Circuit, in reviewing the action of the NLRB in the Wright case, held that after the General Counsel had made out a prima facie case, only the burden of going forward was shifted to the employer, with the burden of ultimate persuasion remaining always with the General Counsel. Wright, supra at 904. Seemingly in accord with this view is the Fourth Circuit (NLRB v. Kiawah Island Co., Ltd., 650 F.2d 485 (1981)), and the Fifth Circuit (TRW, Inc. v. NLRB, 654 F.2d 307 (1981)).
 
 
 13
 Our view is that we should adopt the rule enunciated in the Mt. Healthy case which places the burden on the employer to show by a preponderance of the evidence that it would have reached the same decision as to the employee's dismissal even in the absence of the protected conduct.
 
 
 14
 At the time of his discharge in January 1981, Cotter had been employed by Con Edison for over twenty years, most recently with the title "Mechanic A" in the Field Operations Group of the Power Generation Maintenance Department. He was also active in the Utility Workers Union, Local 1-2, being a shop steward, co-chairman of shop stewards in his group, and, since May 1978, a member of the Union's Nuclear Safety Committee.
 
 
 15
 In reviewing the evidence, we find that the complainant (the intervenor in this proceeding) has produced a prima facie case for improper discharge for the following reasons:
 
 
 16
 1. In November 1980, Cotter complained to General Foreman Ralph Ruez about dangerous conditions in the vicinity of the reactor vessel which was in the process of being repaired. Specifically, Cotter complained to Kinkel (Dorrer's supervisor) that the men were working on the job which was not covered by an appropriate radiation work permit. Kinkel insisted that there was such a permit, but upon investigation it was discovered that the permit only covered supervisors. Kinkel admitted that Cotter was correct, but refused to stop the work. Instead, Kinkel said he would obtain a general work permit.
 
 
 17
 2. On November 19, 1980, Cotter complained to General Foreman Dorrer about possible radioactive dust caused by the sandblasting of the turbine spindle. Dorrer responded by installing a tarpaulin which was not effective in containing the dust. Cotter complained and ultimately higher officials ordered that the job be stopped until the dust could be vented properly.
 
 
 18
 3. On November 20, 1980, the Union's Nuclear Safety Committee met with William Monti, the Indian Point station manager, to express concern about the lack of management action on safety complaints. Cotter criticized Dorrer's and Kinkel's attitude toward safety. It appears that he was justified in making this complaint. Monti rebuked Kinkel and told him to improve his safety procedures. Kinkel complained to one of Cotter's coworkers about Cotter going to higher management without discussing the matter with him.
 
 
 19
 4. About November 22, 1980, Cotter was transferred by Ruez from the containment area, which is the building enclosing the reactor, to a non-nuclear part of the plant. Ruez had tried to do this several days before, but was stopped by Kinkel. After the meeting of November 20, 1980, Kinkel made no effort to stop the transfer. The reason given was that Cotter had been exposed to too much radiation. It turns out that several other men in the containment unit were not transferred out, although they had more exposure than did Cotter.
 
 
 20
 Turning now to the question of whether Con Edison has proven by a preponderance of the evidence that Cotter's dismissal was due solely to his having threatened to kill Dorrer. It would have been helpful if the ALJ had analyzed the testimony in the manner prescribed by the NLRB holding in Wright. However, a review of the testimony in conjunction with the findings made by the ALJ compels the conclusion that Con Edison has failed to sustain its burden of proof.
 
 
 21
 The evidence on the charge that Cotter threatened Dorrer's life is in sharp conflict. Dorrer is the only one able to testify directly as to these threats. All other witnesses on behalf of Con Edison are merely repeating what Dorrer told them. Cotter denies the charge. Duffy, a coworker, supports this denial with testimony of what he observed. His description contradicts Dorrer's story.
 
 
 22
 Furthermore, Dorrer does not seem to have taken such threats seriously, since he was perfectly willing not to report the incident, if Cotter would apologize. Cotter refused to apologize because he denied that he had ever made the threats. Even if the apology was made, Dorrer made clear that he would still report the "hair drying" incident.
 
 
 23
 The hair drying incident occurred after Cotter had performed work assigned to him in an area in which the temperature was between 80 and 90 degrees. He was wearing protective gear and became greatly overheated. When he finished the job, he looked for his superior, who could not be found. Cotter then went into the locker room and borrowed a hair dryer to blow-dry his hair. Dorrer appeared and assumed that Cotter had taken a shower and time off during his working period. At the time, Dorrer told Cotter that he was going to report this incident, and that disciplinary action would follow.
 
 
 24
 The ALJ was correct in his finding that the investigation by Con Edison of the alleged threats was grossly inadequate to support the sanction of dismissal. Refusal by Cotter to take the polygraph test, and Dorrer's taking of such a test resulting in a finding of truthfulness, does not justify the dismissal.
 
 
 25
 Many more witnesses, some of whom subsequently testified before the ALJ, would have had to be interviewed before such definitive action was taken. The original decision to dismiss was made by Kinkel, based on the investigation as it existed on January 28, 1981. His decision was approved that same day, after a telephone call to a senior vice president, and that senior vice president's decision was approved the same day by the vice president of employee relations.
 
 
 26
 Petition for review denied.
 
 
 
 *
 The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 42 U.S.C. § 5851 provides, in relevant part:
 "(a) No employer ... may discharge any employee ... because the employee ... (3) assisted or participated or is about to assist or participate in any manner in ... a proceeding (under this Act or the Atomic Energy Act of 1954, as amended) or in any other action to carry out the purposes of this Act or the Atomic Energy Act of 1954, as amended."