Robert MACKOWIAK, Petitioner,

v.

UNIVERSITY NUCLEAR SYSTEMS, INC., and Secretary, U.S. Department of Labor, Respondents.

No. 83–7353.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1984.

Decided June 22, 1984.

Ann Cross Eschenbach, Seattle, Wash., for petitioner.

Elizabeth S. Woodruff, Dept. of Labor, Washington, D.C., for respondents.

Before WRIGHT, GOODWIN and NORRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Mackowiak, a quality control inspector for University Nuclear Systems, Inc. (UNSI), was terminated in a reduction of force in January, 1982. He asserts that the termination occurred because he was an overly zealous inspector and because he identified safety problems to the Nuclear Regulatory Commission (NRC). He filed a complaint under the "whistle blower" protection statute of the Energy Reorganization Act, 42 U.S.C. § 5851.

After a hearing, an administrative law judge concluded that the termination was not caused by protected conduct and recommended dismissal. The Secretary of Labor found a prima facie case of discrimination. Nevertheless, he dismissed because he found that UNSI would have terminated Mackowiak even if he had not engaged in protected conduct.

In his petition for review, Mackowiak argues that the Secretary's decision was not supported by substantial evidence.

FACTS

Mackowiak is a sheet metal worker certified as a welding inspector by the American Welding Society. When hired by UNSI, he had 18 years experience as a welder and had taken specialized training in welding and welding inspection to qualify as a quality control inspector. UNSI employed him as a quality control inspector at a nuclear power plant under construction in Richland, Washington. UNSI was a subcontractor for Bechtel Power Corporation, installing the heating, ventilating, and air conditioning system at a plant owned by the Washington Public Power Supply System.

As a Level II quality control inspector, Mackowiak inspected work performed by UNSI employees to assure that it conformed to federal specifications. Whenever he found an improperly installed or constructed item, he was required to put a red

tag on it and file a Non-Conformance Report (NCR). UNSI's engineering department was required to resolve the NCR before work could resume.

Whenever an inspector found an item of possible noncompliance, he was required to write a Quality Control Request For Information to the quality assurance department. The department would investigate the potential problem and inform the inspector.

The duties of quality control inspectors are governed by detailed regulations of the Nuclear Regulatory Commission. 10 C.F.R. Part 50, Appendix B, requires licensees, contractors, and subcontractors to establish a quality assurance program that utilizes inspectors of "sufficient authority and organizational freedom to identify quality problems; to initiate, recommend, or provide solutions; and to verify implementation of solutions." *Id.* at 413.

In September 1981, Mackowiak talked to inspectors from the NRC in connection with their ongoing investigation of UNSI's work. He and his wife, who was also a quality control inspector for UNSI, met with the NRC inspectors at their home. They discussed quality control problems at UNSI and made several allegations that were investigated by the NRC inspectors.

Later in September or early October, UNSI's quality assurance manager spoke to an NRC inspector about safety and quality allegations. The manager asked if Mackowiak was involved in these allegations and the inspector replied that he was.

On October 22, 1981, the NRC investigators conducted "exit interviews" with UNSI officials to discuss the safety and quality control allegations. That day, Mackowiak and Virginia Robbins, his supervisor on swing-shift, were given Confidential Counseling Statements and transferred to day shift. Mackowiak was told that he had a negative and mistrustful attitude toward management and that he would be terminated if he did not learn to accept management directives. Robbins was relieved of her supervisory responsibilities and resigned the following day.

Soon thereafter, Mackowiak was transferred to rod control. He considered this position inferior to the one he had held.

UNSI withdrew Mackowiak's counseling statement on December 1, 1981. Several incidents happened in the following month and a half which caused it to question again Mackowiak's attitude. On December 10, 1981, he filed Request for Information No. 433 regarding possible falsification of rod control documentation by UNSI personnel. The subject of this memorandum was later identified by NRC investigators as an open area of UNSI noncompliance with NRC regulations.

On January 8, 1981, without authority, Mackowiak "red tagged" a tool crib when the attendant was absent for a half hour. This incident culminated an ongoing dispute as to access to the tool cribs by the quality control inspectors. In the previous month, Mackowiak had written a Request for Information regarding difficulties he had encountered inspecting locked tool cribs. The management responded by giving inspectors keys or combinations to all cribs that were not continuously manned. UNSI admitted, however, that locks and combinations were changed before January 8 without informing the inspectors.

Also on January 8, UNSI requested new quality control inspectors from the union. Soon thereafter, Bechtel told UNSI that it had to lay off approximately eight percent of its force. The union contract provided:

> In case of layoffs, the last employee hired shall be the first laid off providing the ability and efficiency of the employee is substantially equal.

UNSI determined that Mackowiak's "attitudinal problems" made him inferior to other inspectors with less seniority, despite his admitted technical competence. He and three junior inspectors were terminated on January 19.

UNSI has not denied that Mackowiak was a technically competent inspector. The Confidential Counseling Statement noted that his "inspection qualifications/expertise is excellent and he is a good inspector."

His manager wrote a strong letter of recommendation after Mackowiak was discharged.

Only one or two welding inspectors at UNSI shared Mackowiak's certification by the American Welding Society. There was uncontroverted testimony that the overall level of competence among UNSI's quality control inspectors was low. UNSI bases its entire case on Mackowiak's attitude problems.

ANALYSIS

A. *Standard of Review*

■ We review the Secretary's decision under the Administrative Procedure Act, 5 U.S.C. § 706. We will set aside the agency decision if it is "unsupported by substantial evidence" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* §§ 706(2)(A), (E); *Saavedra v. Donovan,* 700 F.2d 496, 498 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983).

B. *Elements of a Valid Claim Under Section 5851*

■ A discrimination claim under § 5851 must include proof:

(1) That the party charged with discrimination is an employer subject to the Act; (2) that the complaining employee was discharged or otherwise discriminated against with respect to his compensation, terms, conditions or privileges of employment; and (3) that the alleged discrimination arose because the employee participated in an NRC proceeding . . . .

*DeFord v. Secretary of Labor,* 700 F.2d 281, 286 (6th Cir.1983).

■ As a subcontractor of an NRC licensee, UNSI is an employer subject to the Act. 42 U.S.C. § 5851(a). It is also clear that UNSI discriminated against Mackowiak by giving him a Confidential Counseling Statement, by transferring him to less desirable employment, and by discharging him ahead of less senior inspectors. *See DeFord,* 700 F.2d at 287 (discrimination

proved by transfer to less attractive and prestigious job).

The question is whether Mackowiak was discriminated against *because* he participated in an NRC proceeding. The ALJ held that Mackowiak failed to establish a prima facie case of discrimination. He found that UNSI was unaware of Mackowiak's contacts with the NRC investigators. The Secretary questioned this finding, noting that there was adequate evidence in the record "to support an inference that UNSI was motivated in part by Mr. Mackowiak's protected conduct."

"The presence or absence of retaliatory motive is a legal conclusion and is provable by circumstantial evidence even if there is testimony to the contrary by witnesses who perceived lack of such improper motive." *Ellis Fischel State Cancer Hospital v. Marshall,* 629 F.2d 563, 566 (8th Cir.1980), *cert. denied,* 450 U.S. 1040, 101 S.Ct. 1757, 68 L.Ed.2d 237 (1981). We defer to the inferences that the Secretary derives from the evidence, not to those of the ALJ. *NLRB v. Brooks Camera, Inc.,* 691 F.2d 912, 915 (9th Cir.1982).

The record contains circumstantial evidence to support a finding that UNSI was motivated in part by Mackowiak's contact with the NRC. UNSI's quality assurance manager knew that Mackowiak talked to NRC investigators. The sequence of events was suspicious. UNSI gave transfers and counseling statements to Mackowiak and Robbins on the day that the NRC conducted its exit interviews.

Nevertheless, the Secretary found it unnecessary to determine whether UNSI was aware of and motivated by Mackowiak's contacts with the NRC investigators. Instead, he held that § 5851 protects quality control inspectors from retaliation caused by internal complaints regarding safety or quality problems and found that UNSI's decision to fire Mackowiak had been motivated in part by Mackowiak's persistent complaints regarding safety and quality.

The Secretary relied on *Phillips v. Dept. of Interior Board of Mine Appeals,* 500 F.2d 772 (D.C.Cir.1974), *cert. denied,* 420

U.S. 938, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975). In *Phillips,* the District of Columbia Circuit held that internal safety complaints triggered the protections of the "whistle blower" provisions of the Federal Mine Health and Safety Act, 30 U.S.C. § 820(b)(1). *Phillips,* 500 F.2d at 778. *See also Donovan v. Stafford Construction Co.,* 732 F.2d 954 at 960 (D.C.Cir.1984) (following *Phillips* ).

■ We sustain the Secretary's conclusion that § 5851 protects quality control inspectors from retaliation based on internal safety and quality control complaints. The analogy to *Phillips* is persuasive.

The whistle blower provision in the Energy Reorganization Act is modeled on, and serves an identical purpose to, the provision in the Mine Health and Safety Act. *See* S.Rep. No. 95–848, 95th Cong., 2nd Sess. at 29, 1978 U.S.Code Cong. & Ad. News at 7303.

They share a broad, remedial purpose of protecting workers from retaliation based on their concerns for safety and quality. *See Donovan v. Stafford Construction Co., supra,* at 960 (discussing remedial purpose of Mine Health & Safety Act).

The rationale for the rule is stronger here. Quality control inspectors play a crucial role in the NRC's regulatory scheme. The NRC regulations require licensees and their contractors and subcontractors to give inspectors the "authority and organizational freedom" required to fulfill their role as independent observers of the construction process. 10 C.F.R. Part 50, App. B. at 413. In a real sense, every action by quality control inspectors occurs "in an NRC proceeding," because of their duty to enforce NRC regulations.

At times, the inspector may come into conflict with his employer by identifying problems that might cause added expense and delay. If the NRC's regulatory scheme is to function effectively, inspectors must be free from the threat of retaliatory discharge for identifying safety and quality problems.

UNSI argues that the Secretary's ruling would require companies to retain "abrasive, insolent, and arrogant" quality control inspectors if they comply technically with the requirements of the job. Not so. The ruling simply forbids discrimination based on competent and aggressive inspection work. In other words, contractors regulated by § 5851 may not discharge quality control inspectors because they do their jobs too well.

There is substantial evidence to support the Secretary's conclusion that Mackowiak was terminated, in part, because he made internal complaints regarding quality and safety problems. There was testimony indicating that UNSI discouraged its inspectors from asking too many questions, and pressured those who did. Mackowiak was very persistent in raising questions.

Further, several of the specific instances used to justify his termination involved protected conduct. When asked to identify specific instances of Mackowiak's bad attitude, his manager cited Request for Information No. 433. It accused UNSI personnel of falsifying rod control documentation and stated that if continued, it would appear as though UNSI management condoned the practice. The subject of this memorandum was later identified by NRC inspectors as an open area of UNSI noncompliance with NRC regulations.

### C. *The Legal Standard for "Dual Motive" Discharges Under Section 5851.*

The Secretary found that retaliation "was at least a motivating factor" in Mackowiak's discharge. He also accepted the ALJ's finding that UNSI had legitimate business reasons to terminate Mackowiak. He then applied the test for "dual motive" discharges developed by the Supreme Court in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

*Mt. Healthy* created a two-part test for "dual motive" cases. Under it, once the plaintiff has shown that the protected activity "played a role" in the employer's

decision, the burden shifts to the employer to persuade the court that it would have discharged the plaintiff *even if* the protected activity had not occurred. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983); *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

The Supreme Court has approved the *Mt. Healthy* test for dual motive discharge cases under the National Labor Relations Act. *Transportation Management*, 103 S.Ct. at 2475. The Second Circuit has approved the use of this test under § 5851. *Consolidated Edison Co. of N.Y., Inc. v. Donovan*, 673 F.2d 61, 62 (2d Cir.1982).

■ Whether or not the Secretary's use of the *Mt. Healthy* test is "required by the Act, [it] is at least permissible under it ..., and in these circumstances [the Secretary's] position is entitled to deference." *NLRB v. Transportation Management Corp.*, 103 S.Ct. at 2475. It makes sense to allocate the burden of proof to the employer once the employee has shown that an illegal motive played some role in the employer's decision. In these circumstances,

> [t]he employer is a wrongdoer; he has acted out of a motive that is declared illegitimate by the statute. It is fair that he bear the risk that the influence of legal and illegal motives cannot be separated, because ... the risk was created by his own wrongdoing.

*Id.*

### D. *Substantial Evidence*

■ Under *Mt. Healthy*, once the employee shows that illegal motives played some part in the discharge, the employer must prove that it would have discharged the employee *even if* he had not engaged in protected conduct. The Secretary concluded that UNSI met this burden, relying on the ALJ's evaluation of the evidence.

■ The Secretary's reliance on the ALJ's findings to resolve this ultimate question is flawed. The ALJ concluded that Mackowiak had not engaged in any protected conduct. He did not reach the "dual motive" analysis required by *Mt.*

*Healthy.* Therefore, his findings do not support the Secretary's conclusion.

There *is* substantial evidence to support the Secretary's conclusion that Mackowiak was a difficult employee who created some friction in his relations with coworkers and superiors. What is less clear, however, is the extent to which his troublesomeness arose from his persistence in following NRC approved procedures and in identifying quality and safety problems.

UNSI cited a number of specific incidents to illustrate Mackowiak's bad attitude and justify his discharge. Some of these, such as his red-tagging of the tool crib, probably do not merit protection under section 5851. Other incidents, however, arguably do merit protection. As an example, Request for Information No. 433 seems to have been a legitimate part of his duties as a quality control inspector.

■ In dual motive cases, the employer bears the risk that "the influence of legal and illegal motives cannot be separated ...." *Transportation Management*, 103 S.Ct. at 2475. Neither the Secretary nor the ALJ appears to have made a serious effort to sort out these motives. By failing to differentiate between protected and unprotected manifestations of "bad attitude," the Secretary rendered review impossible. We must remand for further proceedings.

The Secretary held that, even if Mackowiak's objectives were proper, "[t]he form of his protected activities infringed a legitimate interest of UNSI." He relies on *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976). This reliance is misplaced.

In *Hochstadt*, the court upheld the dismissal of an employee who ignored her duties to concentrate exclusively on the cause of women's liberation. We stated recently that the "true basis" of *Hochstadt* is that an employer may discharge employees who let protest activities interfere with their job performance. *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1015 (9th Cir.1983). *See also Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1355

(9th Cir.1984) ("*Hochstadt* must be read narrowly lest legitimate activism ... be chilled."). There is no contention that Mackowiak's protected conduct impaired his competence as an inspector. Instead, his conduct flowed directly from his duties.

CONCLUSION:

On this record, we cannot determine whether UNSI could meet its burden of proof under *Mt. Healthy*. We remand to allow the Secretary to resolve the issue. He may hold evidentiary proceedings or remand for a new hearing before an ALJ. In either event, the Secretary must determine independently whether UNSI would have terminated Mackowiak even if he had not engaged in conduct protected by section 5851. Unless UNSI can meet its burden of proof on this issue, the Secretary must find for the petitioner.

PETITION GRANTED. REMANDED FOR FURTHER PROCEEDINGS.