**KANSAS GAS & ELECTRIC COMPANY, Petitioner/Appellant,**

v.

**William E. BROCK, Secretary of Labor, Respondent/Appellee;**

**and**

**James E. Wells, Jr., Intervenor-Respondent,**

**United States Nuclear Regulatory Commission, Government Accountability Project, Nuclear Utilities, Amicus-Curiae,**

**and**

**James E. WELLS, Jr., Plaintiff-Appellee,**

v.

**KANSAS GAS & ELECTRIC COMPANY and its Wolf Creek Generating Plant, Defendants-Appellants.**

Nos. 84–2114, 84–2735.

United States Court of Appeals, Tenth Circuit.

Dec. 26, 1985.

Stanley E. Craven, of Spencer, Fane, Britt & Browne (David L. Wing, Kansas City, Mo., and Mark A. Vining and Ralph B. Foster, Kansas Gas and Elec. Co., Wichita, Kan., with him on the briefs), Kansas City, Mo., for petitioner/appellant.

Allen H. Feldman, (Francis X. Lilly, Sol. of Labor, Karen I. Ward, Associate Sol., and Edward D. Sieger, with him on the brief), U.S. Dept. of Labor, Washington, D.C., for respondent/appellee, Secretary of Labor.

Dale W. Bell, Guy, Helbert, Bell & Smith (Michael C. Helbert, with him on the brief),

Emporia, Kan., for intervenor-respondent/plaintiff-appellee, James E. Wells, Jr.

William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Solicitor, Martin G. Malsch, Deputy General Counsel, and C. Sebastian Aloot, U.S. Nuclear Regulatory Com'n, Washington, D.C., for the amicus Nuclear Regulatory Com'n.

Nicholas S. Reynolds, Joseph B. Knotts, Jr., Richard K. Walker, and David A. Repka, of Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., for amicus Nuclear Utilities.

George A. Shohet, Stephen M. Kohn, and Thomas M. Devine, Government Accountability Project, Washington, D.C., on the brief for amicus Government Accountability Project.

Before BARRETT and MOORE, Circuit Judges, and CHILSON *, District Judge.

JAMES E. BARRETT, Circuit Judge.

Two related matters, Nos. 84–2114 and 84–2735, are presented on appeal. The first, No. 84–2114, is a petition for review of an order by the Secretary of Labor concerning the discharge of a Kansas Gas & Electric (KG & E) employee, James Wells. The second matter, No. 84–2735, is KG & E's appeal from the district court's enforcement of the Secretary's remedial order on behalf of James Wells.

## FACTS

KG & E is the managing partner and owner of a 47% interest in the Wolf Creek Generating Station, a nuclear power plant. James E. Wells was hired by KG & E as a quality assurance inspector. Wells' duties consisted primarily of inspecting equipment and lines that had been manufactured by a sub-contractor of KG & E before these items were integrated into the plant. If inspections uncovered discrepancies or inferior work, Wells was to submit written reports of these deficiencies to his superiors. Although run by the licensee (KG &

E), this quality assurance program is required by Nuclear Regulatory Commission (NRC) regulations. 10 C.F.R. § 50 App. B (II) (1985). The program serves as an adjunct inspection program during the construction and operating phases of a nuclear facility.

A properly functioning licensee quality assurance program is an integral part of the NRC's regulatory program. "Quality control inspectors play a crucial role in the NRC's regulatory scheme. The NRC regulations require licensees and their contractors and sub-contractors to give inspectors the authority and organizational freedom required to fulfill their role of independent observers of the construction process." *Mackowiak v. University Nuclear Systems*, 735 F.2d 1159, 1163 (9th Cir.1984). In effect, such a program serves as the eyes and ears of the NRC because the inspectors are always on site and take over much of the inspection burden from federal personnel. *In the Matter of Consumer's Power Co.*, 7 AEC 7, 11 (1974). The observations and judgments of quality assurance personnel on potential construction deficiencies are documented and that documentation is preserved and facilitates NRC audits. The inspection team of which Wells was a part was established to comply with these regulations. The team was also established in response to a previous NRC investigation in which KG & E was cited for a violation and fined. (Tr. 366, 572–73.)

During his employment with KG & E, Wells performed inspections and filed reports with his superiors detailing potential quality assurance problems. On June 20, 1983, Wells reported safety problems. That same day, Wells was told that he was terminated because he could not get along with his co-workers. (Tr. 405, 452.) Wells protested, claiming this lack of cooperation was merely a pretext and that the real reason that he was being fired was for voicing safety concerns. After a brief discussion, Wells' superiors decided to give

him a second chance and re-instated him. (Tr. 53–57, 402–403.) Wells continued to file reports of safety concerns.

In early August, 1983, Wells again filed a safety report. Again he was called to speak with his supervisor. At this meeting, Wells was told that a routine background investigation had been conducted and several of his qualifications had proved difficult to verify. Wells was told that he had 48 hours to produce documentation of these items or face discharge. Wells was unable to secure the documentation within the allotted time and he was fired. He was, however, able to produce the requested paperwork within two weeks at which time he requested that he be rehired. KG & E refused. It was subsequently learned that KG & E had had difficulty verifying certain background information of other employees who held positions similar to Wells, but they had not been discharged.

Suspecting that he had been a victim of discrimination, Wells contacted the NRC. Wells was told that the Department of Labor (DOL) handled employment discrimination claims. Consequently, he referred his grievance to the Department of Labor.

DOL conducted an investigation and subsequently, a hearing was held before an administrative law judge (ALJ). Wells was found to have been fired for filing internal safety complaints. KG & E was ordered to reinstate Wells and to compensate him with back pay, attorney's fees, and costs. The ALJ's decision was appealed to the Secretary of Labor (Secretary). The Secretary adopted the ALJ's decision and order with minor modifications. KG & E petitions for a review of this decision and order of the Secretary.

Thereafter, Wells filed a complaint in the United States District Court requesting enforcement of the Secretary's order. KG & E also filed a motion to stay proceedings pending administrative action. A motion was also filed with the Secretary to hear evidence on the remedial issues—specifically, the amount of back pay awarded to Wells. The district court denied the stay and also refused to remand. The Secretary of Labor had also denied relief from the amount awarded, finding that he had no jurisdiction because the case was on appeal to this court. The Secretary observed that only this court had authority over the matter.

On appeal, KG & E raises the following issues: (1) whether James Wells engaged in protected activity under 42 U.S.C. § 5851(a) when he filed internal safety reports; (2) whether substantial evidence supports the Secretary's findings that Wells was discharged in retaliation for filing his safety reports, i.e., KG & E's reasons for the discharge were pretextual; (3) whether KG & E waived its right to raise remedial issues; and (4) whether the district court erred by refusing to take jurisdiction over the remedial issues raised by KG & E or, in the alternative, erred by refusing to remand the proceedings for review of such issues to the Secretary of Labor.

## I. Jurisdiction

■ Although not addressed in the briefs of the parties, the panel is troubled by a jurisdictional question. At oral argument it appeared that to this panel that the Secretary of Labor should not be involved with matters pertaining to nuclear safety, such matters more appropriately coming within the expertise of the NRC.

Jurisdiction of the Secretary is claimed under 42 U.S.C. § 5851, which is part of the Energy Reorganization Act (ERA). This Act deals with functions of the Nuclear Regulatory Commission. However, section 5851 of the ERA states that exclusive jurisdiction in employment discrimination matters is vested by Congress in the Secretary of Labor:

(a) Discrimination against employee

No employer, including a Commission licensee, an applicant for a Commission license, or a contractor or a subcontractor of a Commission licensee or applicant, may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment

because the employee (or any person acting pursuant to a request of the employee)—

(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or the Atomic Energy Act of 1954, as amended [42 U.S.C.A. § 2011 et seq.] or a proceeding for the administration or enforcement of any requirement imposed under this chapter or the Atomic Energy Act of 1954, as amended;

(2) testified or is about to testify in any such proceedings or;

(3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other manner in such a proceeding or in any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended [42 U.S.C.A. § 2011 et seq.].

(b) Complaint, filing and notification

(1) *Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of subsection (a) of this section may*, within thirty days after such violation occurs, file (or have any person file on his behalf) *a complaint with the Secretary of Labor* (hereinafter in this subsection referred to as the "Secretary") alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary shall notify the person named in the complaint of the filing of the complaint and the Commission. (emphasis added).

Believing he was entitled to protection as outlined in section 5851, Wells wrote a letter detailing his situation to the Secretary. This letter, though informal in nature, is equivalent to the filing of a formal legal complaint. 29 C.F.R. § 24.3 (1985). This Department of Labor regulation defines what form such a "complaint" must take: "[N]o particular form of complaint is required, except that a complaint must be in writing and should include a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violation." This section is introduced by the following: "This part implements the several federal employee protection provisions for which the Secretary of Labor has been given responsibility pursuant to the following statutes: ... Energy Reorganization Act of 1974, 42 U.S.C. 5851." 29 C.F.R. § 24.1(a)(1985). By writing this letter Wells brought himself into compliance with the initiation of an investigation by the Secretary.

It is clear that what is involved here is a complaint concerning employment discrimination, a matter within the competence of the Secretary. It is foreseeable, however, that intertwined with an employment discrimination complaint could be matters specifically concerning substantive questions of nuclear safety which are better determined by the NRC, a body with competence on nuclear issues.

Upon researching this jurisdictional maze, we believe that jurisdiction over employment matters resides in the Secretary of Labor and that the NRC is not free to accept jurisdiction of these matters concurrently or in its discretion. However, to safeguard the rights of all parties involved in such an employment proceeding, a memorandum of understanding between DOL and NRC concerning employee protection has been signed. See 47 Fed.Reg. 54585 (1982). The memorandum in effect recognizes that DOL is to investigate and conduct hearings on employee complaints and can order a violator to abate the violation. The NRC does not have direct authority to provide the employee with a remedy. DOL is to notify the NRC of any complaint filed with DOL alleging discrimination under the ERA. DOL will also notify the NRC of any hearings on the complaint. Each agency agrees to exchange information concerning any particular allegation. This seems to adequately provide for technical advice to be given to the DOL in the event that technical considerations form part of an employment complaint.

Section 5851 of the ERA vests jurisdiction over employee discrimination matters in the Secretary of Labor. This is clear from the statutory language. In the event that substantial questions involving competence in nuclear energy are involved, the NRC may provide technical assistance to the Secretary pursuant to the memorandum of understanding between the two agencies. We conclude that the matter before us was properly before the Secretary of Labor.

## II. Protected Action

■ KG & E contends that the protection of section 5851 does not encompass the actions, i.e., filing of internal safety complaints, taken by Wells. KG & E argues that Congress envisioned only contacts with governmental agencies to be protected. The company asserts that if the statute is read so as to include internal complaints, then a fundamental facet of the employer/employee relationship is infringed. The statute, however, does not extend its protection to those who try to abuse the protection by filing frivolous complaints. 42 U.S.C. § 5851(g).

The Secretary of Labor, on the other hand, argues that the language and the legislative history of the ERA requires an expansive reading to facilitate the remedial purposes of the Act. Each side cites the same statutory language and the same legislative history to support its interpretation of section 5851. Although each side also relies on precedent from other circuits, the results from other courts are not in agreement about the correct construction of section 5851. The Secretary of Labor, after hearings, found that this legislation is due a broad reading; a narrow interpretation would simply frustrate its aims.

We must first determine the appropriate standard of review of the Secretary's statutory interpretation. The most recent pronouncements of this court hold that an agency's interpretation of its enabling statute is entitled to deference. *Emery Mining Corp. v. Secretary of Labor,* 744 F.2d 1411, 1415 (10th Cir.1984); *Hoover and Bracken Energies v. United States De-*

*partment of Interior,* 723 F.2d 1488, 1489 (10th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984). However, this court has not blindly adhered to this rule. Such deference may be tempered if a different construction is plainly required after an evaluation of the administrative position. *Philadelphia Gear Corp. v. F.D.I.C.,* 751 F.2d 1131, 1135 (10th Cir. 1984) *cert. granted,* —— U.S. ——, 106 S.Ct. 245, 88 L.Ed.2d 253 (1985); *Nevada Power Co. v. Watt,* 711 F.2d 913, 920 (10th Cir.1983).

The administrative position follows. The Secretary found that Wells engaged in a protected activity. The Secretary relied on *Mackowiak v. University Nuclear Systems,* 735 F.2d 1159, 1163 (9th Cir.1984), which held, *inter alia* "... that § 5851 protects quality control inspectors from retaliation based on internal safety and quality control complaints." The Secretary found that the language of the statute was clear in extending coverage to internal activities and, in any event, that the legislative intent was unquestionable in this regard. Even though we are of the view that the Secretary has reached the correct result, the following analysis will hopefully provide guidance to the parties.

At the outset, we will examine the pertinent language of the statute. (See *supra,* pp. 1508, 1509). It is a basic tenet of statutory construction that if statutory language is clear and unambiguous on its face then it must be given its plain meaning and no resort to the underlying legislative history is appropriate. *Nevada Power Company, supra,* at 920. Here a disagreement has arisen over the extent of protection provided by section 5851 and the exact meaning of the language "proceeding or any other action...."

The meaning of the provision is rendered unclear inasmuch as the statute does not include definitions of the pertinent terms. At least two reasonable interpretations of this language are possible. First, KG & E argues that "proceeding" should be narrowly interpreted to mean only formal legal proceedings, i.e., agency actions

against an alleged violator, and "any other action, is merely another way of saying proceeding." Alternatively, the Secretary argues that this language should not be taken out of context but should be read in light of the overall goal of employee protection. Further, the Secretary asserts that the filing of a "complaint, will initiate a proceeding." We note that the Secretary's interpretation is consistent with the definition of "complaint" as found in the agency's regulations. The Secretary contends that quality control inspectors initiate a proceeding when they file internal safety reports with their superiors because each inspector is individually charged with enforcing NRC regulations and such a report is the first step in the initiation of an enforcement proceeding. As in *Train v. National Resources Defense Council,* 421 U.S. 60, 63, 95 S.Ct. 1470, 1474, 43 L.Ed.2d 731 (1974), this case "presents an issue of statutory construction which is illuminated by the anatomy of the statute itself, by its legislative history ..." and by the policy underlying the statute.

Section 5851 of the ERA was added to the Act in 1978. It was patterned after similar provisions in other acts. The Senate report on the ERA amendment comments that,

[t]his amendment is substantially identical to provisions in the Clear Air Act and the Federal Water Pollution Control Act. The legislative history of those acts indicated that such provisions were patterned after the National Labor Management Act and a similar provision in Public Law 91–173 (FMSA) relating to the health and safety of the Nation's coal miners.

S.Rep. No. 848, 95th Cong., 2nd Sess. at 29, 1978 U.S.Code Cong. & Ad.News at 7303.

The employee protections of the NLRA and the Federal Mining Safety Act (FMSA) have been construed often and the teachings of those cases are instructive. The cases stand for the general proposition that internal actions taken by an employee do come within the purview of employee pro-

tection as guaranteed by the respective Acts. *NLRB v. Schrivener,* 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972); *NLRB v. Retail Employees Union, Local 876,* 570 F.2d 586 (6th Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 109 (1978) where an employee was protected when she expressed unwillingness to her employer to testify in accordance with her employer's wishes in an NLRB hearing. The employee, however, did not actually testify; *Phillips v. Interior Board of Mine Operations Appeals,* 500 F.2d 772, 779 (C.A.D.C. 1974) *cert. denied,* 420 U.S. 938, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975), where the employee notified his foreman of possible dangers in the workplace; this was held to be instituting a proceeding, entitling the employee to the Act's coverage.

Senate Report No. 848, U.S.Code Cong. & Admin.News 1978, p. 7303, specifically states that section 5851 was patterned after similar employee protection provisions in other acts. Even so, KG & E contends that reliance on any FMSA cases is misplaced because the employee protection provision of that Act was amended in 1977.[1] The FMSA amendment of 1977 changed the language of the provision to expressly include internal complaints: "No person shall ... discriminate against ... any miner ... who has made a complaint ... including a complaint notifying the operator or the operator's agent...." 30 U.S.C. § 815(c)(1). KG & E argues that inasmuch as the FMSA was amended in 1977 and the ERA was enacted in 1978 then, if the legislative draftsmen had intended to include internal complaints, they certainly knew how to say so. However, the legislative history of the FMSA amendment shows that Congress did, in fact, intend the older version of the amendment to afford protection to internal complaints and the older version of the amendment is what the ERA provision was modeled after. "The committee intends to insure the *continuing* vitality of various judicial interpretations of § 110 of the Coal Act which are consistent with the broad protections of the

1. FMSA cases often yield fact situations similar to those encountered under the ERA.

bill's provisions; see e.g., *Phillips v. IBMA*, 500 F.2d 772 [(D.C.Cir.1974)]; *Munsey v. Morton*, 507 F.2d 1202 [(D.C. Cir.1974)]; S.Rep. No. 181, 36, 95th Cong. 1st Sess. 1977, U.S.Code Cong. 2nd Ad. News, 3401, 3436. (emphasis added). Both the *Phillips* and *Munsey* cases unequivocably stand for the proposition that internal activities are to be protected under the original version of the FMSA. Thus, it is clear that Congress was advocating the protection of internal action and changed the statutory language not because its intent had changed, but because this intent had been incorrectly perceived by certain courts. We further observe that the legislative history of the ERA points out that § 5851 is modeled after similar provisions in several other acts, not simply the FMSA. The provisions of the other acts have broad remedial purposes and have been so construed by the courts.

The *Mackowiak* court held that "[these acts] share a broad, remedial purpose of protecting workers from retaliation based on their concerns for safety and quality." *Mackowiak, supra* at 1163. The ERA's legislative history strongly supports this interpretation.

> Under this section, employees and union officials could help assure that employers do not violate requirements of the Atomic Energy Act.
>
> Any worker who is called upon to testify or who gives information with respect to an alleged violation of the Atomic Energy Act or a related law by his employer or who files or institutes any proceeding to enforce such law against an employer may be subject to discrimination. This section would prohibit any firing or discrimination and would provide an administrative procedure under which the employee or his representative could seek redress for any violation of this prohibition.

S.Rep. No. 848, 95th Cong., 2nd Sess. at 29, U.S.Code Cong. & Admin.News 1978, pp. 7303, 7304.

The regulations promulgated by the NRC further echo the broad reading intended:

### Employee Protection

Discrimination by a Commission licensee, permitee, and applicant for a Commission license or permit, or a contractor or subcontractor of a commission licensee, permitee or applicant against an employee for engaging in certain protected activities is prohibited. Discrimination includes discharge and other actions that relate to compensation, terms, conditions, and privileges of employment. The protected activities are established in § 210 of the Energy Reorganization Act of 1974, as amended, and in general are related to the administration or enforcement of a requirement imposed under the Atomic Energy Commission Act or the Energy Reorganization Act. (1) *the protected activities include but are not limited to:* (i) providing the Commission information about possible violations of requirements imposed under either of the above statutes; (ii) requesting the Commission to institute action against his or her employer for the administration or the enforcement of these requirements; or (iii) testifying in any Commission proceeding. (2) *These activities are protected even if no formal proceeding is actually initiated as a result of the employee assistance or participation.* (Emphasis added).

10 C.F.R. § 50.7 (1985). These regulations are controlling and entitled to great weight if reasonable. *Donovan v. Hahner, Foreman, and Harness, Inc.*, 736 F.2d 1421, 1425 (10th Cir.1984). The regulations make it clear that a formal proceeding is not required in order to invoke the protection of the Act.

In our view, a narrow, hyper-technical reading of § 5851 will do little to effect the statute's aim of protection. KG & E seems to imply that Wells would be entitled to protection only if he had personally filed a formal complaint with the NRC. However, KG & E fails to take into account the memorandum of understanding between

DOL and NRC. (See *supra*, p. 1509). That memorandum requires DOL to forward a copy of a complaint with supporting documentation to the NRC. It would be redundant for Wells to send the NRC copies of his internal safety complaints when DOL has already provided the NRC with these reports.

We believe that the construction given to section 5851 by the *Mackowiak* court accurately reflects the intent of Congress. We recognize that a different result was reached in *Brown and Root v. Donovan*, 747 F.2d 1029 (5th Cir.1984). In our view, the construction of the ERA there employed is incorrect because it takes no notice of the agency regulations, tries to liken the term "action" as synonomous with "proceeding," contends that such employment determinations are outside the competence of the Secretary of Labor because matters concerning nuclear safety are exclusively involved, and discovers nothing in the legislative history to support a broad construction of section 5851. The *Brown and Root* court also discounts *Consolidated Edison Company of New York, Inc. v. Donovan*, 673 F.2d 61 (2nd Cir.1982), which stands for the proposition that wholly internal complaints are protected by section 5851. *Brown and Root* contains the comment that both parties in *Consolidated Edison* did not dispute the coverage of section 5851; · thus, the court concludes that the case had little precedential value because the court did not challenge the parties' interpretation of section 5851. The most recent pronouncement of the meaning of section 5851 is found in *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill. Dec. 561, 485 N.E.2d 372 (1985), where the court also construed the remedial purposes of the ERA broadly in a case involving the filing of internal complaints.

### III.   Sufficiency of Evidence

■   KG & E challenges the Secretary's decision on the basis of the sufficiency of the evidence. The Secretary cited the following evidence in support of his decision that Wells' firing was pretextual:

The failure of KG & E to offer any counsel or warning prior to the June 2, 1983 meeting at which it planned to dismiss complainant, the dispirate treatment accorded another employee who did not meet the educational prerequisites for employment with KG & E, the short period of time allowed complainant to produce the documentation as to his Calhoun College credits and his Daniel's employment, and the curtailment of that period, the significance of Reeves' (Wells' supervisor) removal of complainant's discrepancy report from the typing box and the date stamping thereof, and the refusal of KG & E to re-employ complainant.

*In the matter of James E. Wells, Jr.*, 83–ERA–12, 11 (1984). After a thorough review of the record, we hold that there was ample evidence to support the Secretary's findings.

### IV.   Waiver of Objections to Remedial Measures

■   In August, 1983, Wells filed his complaint with the Department of Labor alleging retaliatory discharge. Pursuant to the ERA, the DOL conducted its own investigation of the matter. In September, 1983, the DOL Compliance Officer issued her findings and recommendations for relief. Included in these recommendations were the following: "The employer should be advised to restore Wells to his job, pay lost wages for the period he has been off work, and expenses incurred by him." (Tr. 244–47.)

KG & E requested a formal administrative hearing before an ALJ. This hearing took place in mid-January, 1984. The ALJ's Decision and Order was issued on February 27, 1984. The Order contained relief nearly identical to the relief recommended by the DOL. This order was appealed to the Secretary of Labor who affirmed the ALJ's order in mid-June, 1984. In addition to his consideration of the record, the Secretary also had the benefit of the post-hearing briefs of the parties. Wells filed an enforcement action with the district court in July, 1984, in an attempt to compel KG & E to comply with the Secre-

tary's orders for re-instatement and back pay. It was not until October, 1984, however, that KG & E filed a motion with the Secretary to request the re-opening of the proceedings to take evidence on the remedial orders. KG & E contends that at all times Wells knew that his position as a quality assurance inspector was to be terminated on or about May 11, 1984. Consequently, KG & E argues that the Secretary's order is inappropriate relief and, at the very least, the order should be vacated by this court and remanded to the administrative agency so that evidence on the duration of Wells' employment may be presented.

Although the record made before the ALJ on this issue is sparse, it does contain Wells' statement that he was told when he was hired that his position would probably end in May, 1984. Wells argues that it was the responsibility of KG & E to make an adequate record on this matter and because KG & E has not done so, its objections to the relief fashioned have been waived. KG & E counters that at the time the record was made—January, 1984—it had no reason to believe that the duration of the position would pose problems. KG & E apparently was certain that the Secretary would render his decision well before the projected termination date and KG & E therefore took no action. KG & E claims that its actions do not amount to a waiver.

The troublesome part of KG & E's argument is that even if it was not apprised that the exact nature of appropriate relief was an issue prior to May 11, 1984, it does not explain how it could have believed that it was not an issue after that time. The ALJ's order contained no dates to indicate the amount of back pay Wells was due or the period of time for which Wells was to be reinstated. Thus, although it is possible that KG & E believed that it would only be obligated to Wells until May 11, 1984, it is difficult to understand how KG & E remained under this delusion after May 11, 1984. Between May 11 and June 14, 1984, when the Secretary's order was issued, KG & E made no attempt to petition the Secretary or the agency to determine or contest the exact nature of the relief; in fact, not until October, 1984, when KG & E was ordered by the district court to carry out the proposed relief did KG & E request that the Secretary take evidence on the remedial measures.

KG & E's appeal to this court on this issue and to the Secretary is untimely. *Osteopathic Hospital Founders Ass'n v. NLRB*, 618 F.2d 633, 639 (10th Cir.1980). On May 11, 1984, KG & E certainly was put on notice that an issue existed. It was KG & E's duty to petition the Secretary to take evidence on the issue while the Secretary was able to act on the matter. We will not consider contentions not presented to the Secretary, absent exceptional circumstances. *Wilson v. Hodel*, 758 F.2d 1369, 1379 (10th Cir.1985). No exceptional circumstances exist here. KG & E followed an incorrect course. Even as of May 4, 1985, the date KG & E's reply brief was filed, it does not seem that KG & E was cognizant of its error, for it stated in its brief: "[I]t is difficult to determine how KG & E should have proceeded differently." (Petitioner's Reply Brief at 12). In the Secretary's brief it was asserted that KG & E should have requested further hearings from the Secretary on the reinstatement issue. KG & E responds, "we do not believe KG & E can be faulted for not doing this [requesting a hearing] nor do we believe it would have been realistic to have expected the Secretary to have reopened the record at that point on the narrow remedial issue presented." *Id.* KG & E seems to admit that it simply did not believe that the issue was important and thus overlooked it. Inasmuch as the contentions were not raised at the appropriate time they are deemed to have been waived. *Osteopathic Hospitals, supra*, at 639, 640.

■ KG & E further complains that the district court could have entertained evidence on the remedial issue during the enforcement action. The statutory language is clear that the district court shall enforce the Secretary's orders, and that

this duty is a ministerial one. 42 U.S.C. 5851(d). An appeal from the Secretary's decision can lie only with the court of appeals. 42 U.S.C. 5851(c)(1).

In No. 84–2114, we **ENFORCE** the Secretary's order on the merits in favor of Wells. In No. 84–2735, we **AFFIRM** the district court's order enforcing the Secretary's remedial order entered on behalf of Wells.