**William A. DUNHAM, Petitioner,**

v.

**William E. BROCK, Secretary of Labor, Respondent.**

No. 85–4575.

United States Court of Appeals, Fifth Circuit.

July 23, 1986.

Mary L. Sinderson, Houston, Tex., for petitioner.

Edward D. Sieger, Mary-Helen Mautner, U.S. Dept. of Labor, Washington, D.C., for respondent.

Richard K. Walker, Frederick J. Killion, Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., for intervenor Brown & Root, Inc.

Before BROWN, REAVLEY, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

This appeal concerns the validity of a discharge measured against the employee protection or "whistle blower" provision of the Energy Reorganization Act of 1974, Section 210, as amended, 42 U.S.C. § 5851. Petitioner Dunham requests this Court to set aside an order by the Secretary of Labor finding that Dunham's termination as a protective coatings inspector at the Comanche Peak Steam Electric Station ("Comanche Peak") in Glen Rose, Texas, was not a retaliatory discharge violating Section 210. The Secretary, adopting the recommended decision and order of the Administrative Law Judge, determined that despite engaging in protected activity, Dunham had given his employer, Brown & Root, Inc., a legitimate overriding reason for his termination—insubordination. Dunham contends that the insubordination justification was merely a pretext, and that he was actually discharged because he had complained to the Nuclear Regulatory Commission ("NRC") and upper-level Comanche Peak management about supervisor harassment and intimidation. Because we find on review of the record that substantial evidence supports the Secretary's determination, his order is AFFIRMED.

A.

Petitioner was hired by Brown & Root, Inc., the prime contractor at Comanche Peak as a quality assurance ("Q/A") inspector in the protective coatings division in November 1981. Dunham was promoted to lead inspector, responsible for supervising other inspectors and responding to rejected-work disputes, in January 1983, and was further upgraded the following July.

In January 1983, Dunham filed a complaint with the NRC charging that his immediate supervisor, Harry Williams, harassed and intimidated Dunham and other inspectors by restricting their ability to point out deficiencies and complete nonconformance reports.[1] Although Dunham's NRC complaint prompted a Commission investigation, Williams' objectionable conduct continued, and Dunham registered a similar complaint the following June with Gordon Purdy, Brown & Root's on-site Q/A Manager in charge of personnel and administrative affairs. Purdy then arranged a meeting, attended by Comanche Peak Q/A Manager Ronald Tolson and mid-level Q/A supervisor Thomas Brandt, which eventually led to Williams' replacement and reassignment. Nevertheless, the perception of harassment continued, and Dunham and other inspectors again voiced concerns at an August 18 meeting conducted by Brandt's assistant, Myron Krisher. These complaints, however, apparently led to no significant changes.

On August 24, 1983, a meeting of Q/A inspectors and craft personnel was conducted at which two corrosion engineers appeared to discuss technical changes anticipated in the coatings department. Questions and comments were invited, and Dunham participated in a critical, counterproductive and argumentative manner. He again complained openly about inspector harassment and intimidation. Krisher,

---

1. NRC regulations require that nuclear power plant licensees and construction contractors maintain a quality assurance program and that Q/A personnel have sufficient authority and freedom to identify quality problems and initiate, recommend, or provide solutions. Appendix B to Part 10 C.F.R. § 50.34(a)(7) (1983). To this end, the Section 210 of the Energy Reorganization Act, 42 U.S.C. § 5851, provides a reme- dy for a nuclear energy industry employee who has been discharged or otherwise discriminated against because he has testified, given evidence, or brought a proceeding under the Energy Reorganization or Atomic Energy Acts, or has engaged in "any other action to carry out the purposes" of either Act. *Brown & Root, Inc. v. Donovan,* 747 F.2d 1029, 1030 n. 2 (5th Cir. 1984).

management's representative at the meeting, viewed Dunham's conduct as negative, disruptive, and obnoxious, an opinion later corroborated by one of the corrosion engineers, and thereafter discussed his observations with Brandt. Several management discussions over the next two days considered how to react to Dunham's behavior, and the option of a three-day suspension was finally rejected in favor of a counselling session. Purdy, the personnel head, instructed Krisher to prepare a report and schedule a meeting on the afternoon of August 26.

Dunham's counselling session was attended by Purdy, Krisher, and Williams' replacement, Evert Mouser. Initially, Purdy handed Dunham the counselling report and invited him to read it and comment. The reason stated for the conference was "attitude." The report stated that Dunham had frequently expressed a lack of confidence in the protective coatings' Q/A program, specifying in particular the August 24 meeting, and characterized Dunham's demeanor at the meeting as dominant, disruptive, counter-productive, and unprofessional. The report concluded with a warning that such an attitude and behavior would not be tolerated, and that any similar future demonstrations would result in disciplinary action.

After scanning the report, Dunham uttered an obscene expletive and emphatically asserted that he would not "change" so Purdy "might as well walk him to the gate." Again encouraging Purdy to "walk him to the gate," Dunham cavalierly stated that he did not have to worry about work; he complained that the counselling report was the Q/A division's real problem, and he returned the report to Purdy. Purdy momentarily left the room and upon returning accepted Dunham's invitation and arranged for his immediate termination. On Dunham's discharge form, Purdy specified Dunham's performance rating as "fair" and designated the reason for his termination as "insubordination." When

asked to sign the form, Dunham wrote an obscene expletive in the signature space, expressing disagreement with the reason for his termination, and left the Comanche Peak site.

The month before Dunham's discharge, on July 10, 1983, an NRC investigator had interviewed Brandt concerning the harassment complaint Dunham had filed with the NRC the preceding January. The investigator did not reveal to Brandt the complaining inspector's identity. The ALJ found it not unlikely that Brandt and other Comanche Peak management employees suspected Dunham as the source of the NRC report, however, due to the active, persistent, and similar nature of Dunham's internal complaints.

After an evidentiary hearing conducted in response to a retaliatory discharge complaint, the ALJ found that Dunham's internal complaints to management were protected employee activity under Section 210, as well as the underlying motivation for Dunham's disciplinary counseling session. Nevertheless, the ALJ found that Dunham's discharge was not preplanned; that although improperly motivated to quell Dunham's discontent and protests, the counselling session was not a "set up" or pretext for his dismissal; and that Dunham's foul language and disdainful conduct, essentially telling Purdy to "take his job and shove it," provided a genuine overriding impetus for Dunham's termination. Thus, the ALJ concluded, Dunham was not discharged in violation of Section 210, and a recommended decision and order, which the Secretary subsequently adopted, was entered accordingly.

## B.

■ As an initial matter, it is disputed whether the ALJ erred in allocating the burden of proof in Dunham's favor, and in finding that Dunham's internal complaints to Comanche Peak management were protected activity under Section 210.[2] It is well recognized, however, that Dunham's challenge ultimately rests upon whether

**2.** The Fifth Circuit has yet to determine the appropriate allocation of the burden of persua-

sion in a retaliatory-discharge case under Section 210 of the Energy Reorganization Act, 42

the Secretary's findings are supported by substantial evidence. *See Mackowiak v. University Nuclear Systems, Inc.*, 735 F.2d 1159, 1162 (9th Cir.1984); 5 U.S.C. § 706(2)(E). In a retaliatory discharge case, the aggrieved employee may prevail only if he would not have been discharged *but for* his participation in the statutorily protected activity. *See Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir.1984). Thus, if substantial evidence supports the Secretary's decision that Dunham's discharge would have occurred despite his alleged protected activity, adjusting the order of proof and analyzing that activity under Section 210 become "academic exercises of little or no value." *See DeFord v. Secretary of Labor*, 700 F.2d 281, 285 (6th Cir.1983).

Under the substantial evidence review standard, this Court may not displace the factfinder's "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *N.L.R.B. v. Walton Mfg. Co.*, 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1969). Substantial evidence is "something less than the preponderance of the evidence," *Brennan v. National Hotel Co.*, 476 F.2d 17, 21 (5th Cir.1973), but is "more than a scintilla." *N.L.R.B. v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 299–300, 59 S.Ct. 501, 504–05, 83 L.Ed. 660 (1939).

## C.

 Reviewing the record before us in light of the foregoing, we conclude that substantial evidence supports the Secretary's determination that Brown & Root would have legitimately discharged Dun-

U.S.C. § 5851. The ALJ, relying on the Second Circuit opinion in *Consolidated Edison Co. of New York v. Donovan*, 673 F.2d 61, 62 (2d Cir.1982), applied the shifting-burden test for dual-motive discharge cases followed by the Supreme Court in the First Amendment retaliatory-discharge action of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Under this test, "once the plaintiff has shown that the protected activity 'played a role' in the employer's decision the burden shifts to the employer to persuade the court that it would have discharged the plaintiff *even if* the protected activity had not occurred." *Mackowiak v. University Nuclear Systems, Inc.*, 735 F.2d 1159, 1163–64 (9th Cir.1984). Despite prevailing below under this more onerous standard, Brown & Root, relying upon *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir.1984), asserts that the Fifth Circuit "has expressly rejected the contention that the burden of showing 'but for' causation should be allocated to the defendant in statutory retaliation cases." Citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983), Brown & Root maintain that ultimately the *plaintiff* must show that *but for* the protected activity, the termination would not have occurred, notwithstanding the other legitimate reasons advanced by the defendant. The Secretary conversely defends the ALJ's application of the *Mt. Healthy* test. For reasons stated in the opinion above, these arguments, and the issue raised thereby, need not be addressed.

The parties are also at odds concerning whether the ALJ erred in concluding that Dun-

ham's internal complaints to Comanche Peak management are protected activity under Section 210. The ALJ apparently issued his recommendation and order before and without the guidance of *Brown & Root, Inc. v. Donovan*, 747 F.2d 1029, 1036 (5th Cir.1984), in which this Court held that "employee conduct which does not involve the employee's contact with a competent organ of government is not protected under section [210]." Dunham's internal complaints in this case mirrored the complaint he filed with the NRC and therefore present a slightly different scenario than that addressed in *Brown & Root, Inc. v. Donovan*, which involved only internal nonconformance complaints but no NRC contact. In relying on authority from other circuits to determine that Section 210 encompassed internal complaints to management, the ALJ never directly addressed whether Dunham's NRC complaint affected Brown & Root's decision to conduct the disciplinary counselling session. On appeal, both the Secretary and Brown & Root contend that despite Dunham's NRC complaint, *Brown & Root, Inc. v. Donovan* is controlling because there is no direct evidence that Comanche Peak management was aware that it was Dunham who initiated the NRC complaint and the counselling session during which Dunham's discharge transpired stemmed only from Dunham's internal activity. Dunham asserts that his internal complaints fall within Section 210 because they mirrored his NRC complaint and, as the ALJ noted in his recommendation, under the facts presented it is unlikely that Comanche Peak management did not suspect Dunham as the NRC complaint's source. For reasons stated in the text above, these arguments also need not be addressed.

ham despite his participation in protected activity. Abusive or profane language coupled with defiant conduct or demeanor justify an employee's discharge on the ground of insubordination. *See Sullair P.T.O., Inc. v. N.L.R.B.,* 641 F.2d 500 (7th Cir. 1981); *Florida Steel Corp. v. N.L.R.B.,* 529 F.2d 1225, 1233–34 (5th Cir.1976); *Boaz Spinning Co. v. N.L.R.B.,* 395 F.2d 512 (5th Cir.1968); *N.L.R.B. v. Miami Coca-Cola Bottling Co.,* 222 F.2d 341, 343–44 (5th Cir.1955). In this case, Dunham's obscene language and hostile conduct are sufficiently documented and were supported by the ALJ's opportunity to assess the credibility of the witnesses before him. The ALJ's findings, with which we concur, indicate that Dunham's foul language and mere resistance to change in response to improperly motivated counselling, without more, might have led to a different conclusion. When taken with Dunham's cavalier attitude and his repeated encouragement that Purdy show him the door, however, these factors support a reasonable inference of insubordination sufficient to justify a discharge. *See, e.g., N.L.R.B. v. Great Dane Trailers, Inc.,* 396 F.2d 769, 771 (5th Cir.1968). Section 210, the ALJ reasoned, does not sanction this type of abuse, and an employer need not tolerate it. Despite Dunham's vigorous attack upon the substantiality of the evidence, he does not deny the facts found by the ALJ, and we cannot disturb the inferences reasonably drawn from them.

■ The ALJ's finding that insubordination was the genuine impetus for Dunham's discharge is also sufficiently documented. Several witnesses, including Purdy, testified that Dunham's undesirable "attitude" merited a counselling session and possible three-day suspension, but suspension was reconsidered and abandoned as inappropriate. Dunham's counselling report, which was admitted into evidence, called for attitude and behavior modification and warned of possible future discipline. The reason stated for termination, however, was not Dunham's attitude, but "insubordination." The ALJ concluded that the counselling session was not a "set up," and that Dunham's termination was in

no way anticipated or predetermined. Rather, he stated, the evidence supported the reasonable inference "that Tolson had cautioned against drastic action, but Purdy became exasperated by [Dunham's] response and fired him on the spot." On our review of the record, we cannot disagree.

Citing no pertinent authority, Dunham suggests that his discharge was automatically invalid because it was provoked by and inextricable from the improperly motivated counselling session during which it transpired. This position is contrary to the fact-finder's accepted role of weighing evidence and determining whether a particular employee response to improper employer provocation is justified. *See Boaz Spinning Co.,* 395 F.2d at 514–16; *N.L.R.B. v. Steiner Film, Inc.,* 669 F.2d 845, 852 (1st Cir.1982). An otherwise protected "provoked employee" is not automatically absolved from abusing his status and overstepping the defensible bounds of conduct. *See N.L.R.B. v. City Disposal Systems, Inc.,* 465 U.S. 822, 837, 104 S.Ct. 1505, 1514, 79 L.Ed.2d 839 (1984); *N.L.R.B. v. Florida Medical Center, Inc.,* 576 F.2d 666, 672–73 (5th Cir.1978); *Crown Central Petroleum Corp. v. N.L.R.B.,* 430 F.2d 724, 729–30 (5th Cir.1970).

Accordingly, the Secretary's decision is AFFIRMED on the basis of substantial evidence in record.