**AMERICAN NUCLEAR RESOURCES, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 96–3825.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1997.

Decided Jan. 29, 1998.

Kevin M. McCarthy (argued and briefed), Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for Petitioner.

Lois R. Zuckerman (argued and briefed), William J. Stone (briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Respondent.

Before: SILER, BATCHELDER, and GIBSON,* Circuit Judges.

## OPINION

SILER, Circuit Judge.

Petitioner, American Nuclear Resources, Inc. ("ANR"), seeks to reverse a Secretary of Labor decision holding it liable for back pay and attorney's fees. The Secretary held that ANR violated the Energy Reorganization Act by discharging an employee, Gregory Sprague, because he reported a safety violation. Because the Act does not protect Sprague's conduct, we REVERSE.

I

ANR is a contractor at a nuclear power plant in Michigan. On March 11, 1992, Sprague started at ANR as a tool accountability technician. Along with others, he monitored the reactor containment area to prevent objects from falling into the reactor cavity. Sprague, however, quickly developed interpersonal problems at ANR. His supervisor, Georgina Emanuel, testified that he was rude and abrasive. One of his co-workers found him "somewhat pushy" and tried to avoid him whenever possible.

Two incidents hastened Sprague's termination. On March 19, some Radiation Protection employees (RPs) sprayed the cavity's walls to prevent airborne radiation. The RPs evidently waited too long to spray, however, and their delay let the particles contaminate Sprague. Afterwards, Sprague entered

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Emanuel's office and started complaining about "the stupid RP's not knowing what they were doing," even though the RPs did not work for ANR. ANR contends that Sprague was yelling, though he denies this. The next day, March 20, Sprague underwent a "full body count" to measure his radiation level. While most tests took two minutes, Sprague's took two hours. His results were abnormally high. During the testing, Sprague became upset at the RPs. Emanuel stated he "scream[ed]" at the RPs for an hour, though Sprague contends that he kept his temper. After the test, Sprague requested a copy of the body count, but the RPs refused and instead gave him an exposure report that contained the same information in a more readable format. Later that same day, still less than two weeks after Sprague started, Emanuel decided to terminate his employment.[1]

▉ Sprague later filed a complaint with the Department of Labor and alleged that his termination violated the whistleblower provisions of the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851. An administrative law judge and the Secretary of Labor ruled in Sprague's favor. Both found that ANR terminated Sprague because he questioned the RPs about safety and, therefore, violated the ERA. Pursuant to 42 U.S.C.

§ 5851(c), ANR now appeals and contends that it fired Sprague solely because of his interpersonal problems.[2]

## II

▉▉ We review the Secretary's legal conclusions *de novo*, although we defer somewhat to the agency because it is charged with administering the statute. 5 U.S.C. § 706(2)(A); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We will uphold an interpretation if "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. On the other hand, we review fact findings to ensure that substantial evidence supports them. *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court reviews the application of law to fact under the same substantial evidence standard. *Turnbull Cone Baking Co. v. N.L.R.B.*, 778 F.2d 292, 295 (6th Cir.1985).

## III

Amended in 1992, the ERA protects workers from retaliatory discharge.[3] The statute,

---

**1.** After work that day, Sprague contacted the Nuclear Regulatory Commission (NRC) and requested a copy of the his full body count. In the litigation below, the parties disputed the timing of Emanuel's decision to terminate Sprague, but on appeal the government concedes that Emanuel decided to terminate Sprague before he contacted the NRC.

**2.** ANR's Petition for Review named only the Department of Labor as respondent. Parties to an agency proceeding such as Sprague are not proper respondents, although they may move to intervene. *Oil, Chemical & Atomic Workers, Local Union No. 6–418 v. N.L.R.B.*, 694 F.2d 1289, 1298 (D.C.Cir.1982). Here, Sprague filed a responsive brief, but he never moved to intervene. Accordingly, this court ignores Sprague's brief.

**3.** 42 U.S.C. § 5851, *amended by* Pub.L. No. 102–486, 106 Stat. 2776. Because Sprague filed his complaint before the amendments took effect, the pre–1992 version of the ERA governs here. Pub.L. No. 102–486 § 2902(i). Unless otherwise noted, this opinion cites to the current version of the statute.

In terms of defining protected activities, the amendments essentially codify earlier court decisions. *See Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1575 (11th Cir.1997) (noting that Congress "ratified" court decisions protecting internal complaints). The amendments' legislative history states that the new statute amends the law "to explicitly" protect certain activities. H.R.REP. No. 102–474 (VIII) (1992). The amendments explicitly protect three activities that most court decisions already protected. *See* 42 U.S.C. § 5851(a)(1)(A), (B), (C). For example, § 5851(a)(1)(A) protects an employee who "notified his employer of an alleged [safety] violation." Before the amendment, almost every circuit also protected these internal safety complaints. *See Bechtel Construc. Co. v. Secretary of Labor*, 50 F.3d 926, 931 (11th Cir.1995) (noting that almost all circuits agreed).

Because the amendments essentially codify the law regarding protected activities, we believe that we would reach the same result under the current statute. The Sixth Circuit protected internal complaints even before the amendments. *Jones v. Tennessee Valley Auth.*, 948 F.2d 258, 264 (6th Cir.1991). Moreover, one case based

patterned after other whistleblower statutes affecting other industries, is designed to protect workers who report safety concerns and to encourage nuclear safety generally. Courts interpret the statute broadly to implement its "broad, remedial purpose." *Mackowiak v. University Nuclear Sys., Inc.,* 735 F.2d 1159, 1163 (9th Cir.1984).

The statute explicitly protects a few acts, such as testifying in a safety proceeding. 42 U.S.C. § 5851(a)(1)(E). The statute also includes a catch-all provision that protects employees "in any other action [designed] to carry out the purposes of [the safety statutes]." *Id.* at § 5851(a)(1)(F). To state a claim under the ERA, an employee must establish that the employer retaliated because the employee engaged in a protected activity. *Bartlik v. United States Dep't of Labor,* 73 F.3d 100, 103 & n. 6 (6th Cir.1996). If an employer retaliates for both legitimate and illegitimate reasons, courts apply the "dual motive" test, under which the employer must show that it would have retaliated even if the protected activity had not occurred. *Mackowiak,* 735 F.2d at 1163–64. The employer bears the risk if the two motives prove inseparable. *Id.* at 1164. *See also Pogue v. United States Dep't of Labor,* 940 F.2d 1287 (9th Cir.1991) (where employee filed seven internal safety complaints but often behaved disrespectfully, applying the test in favor of the employee).

Therefore, a court first must determine whether the ERA protects the employee's acts. Building on the Act's language, courts have held that the ERA protects many types of acts that implicate safety. For example, the ERA protects an employee who files internal reports concerning regulatory violations. *Jones v. Tennessee Valley Auth.,* 948 F.2d 258, 264 (6th Cir.1991). Although the old version of § 5851 fails to protect internal reports explicitly, courts protect internal reports to advance the statute's policy goals. *E.g., Bechtel Construc. Co. v.*

*Secretary of Labor,* 50 F.3d 926, 931 (11th Cir.1995).

Despite this generally broad reading, courts limit the ERA to protect only certain types of acts. To constitute a protected safety report, an employee's acts must implicate safety definitively and specifically. *Id.* In *Bechtel,* a carpenter disagreed with his foreman about the procedures for protecting radioactive tools. The court protected the carpenter's acts because he "raised particular, repeated concerns about safety procedures," which were "tantamount to a complaint." *Id.* The court also noted, however, that "general inquiries regarding safety do not constitute protected activity." *Id.*

The ERA does not protect every incidental inquiry or superficial suggestion that somehow, in some way, may possibly implicate a safety concern. *Stone & Webster Eng'g Corp. v. Herman,* 115 F.3d 1568, 1574 (11th Cir.1997). In *Stone & Webster,* a case decided on post-amendment law, the employee held a weekly safety meeting at which he discussed fire safety with his fellow ironworkers. The court noted that "Section 5851 does not protect every act ... under the auspices of safety," and that "[w]histleblowing must occur through prescribed channels." *Id.* The court protected the employee's acts, however, because the "meeting ... was included in a series of communications to employer representatives ... [that] were, under the circumstances, mutually reinforcing." *Id.* at 1575.[4]

Moreover, an employer may terminate an employee who behaves inappropriately, even if that behavior relates to a legitimate safety concern. *Dunham v. Brock,* 794 F.2d 1037, 1041 (5th Cir.1986). In *Dunham,* the employee filed a safety report with the Nuclear Regulatory Commission. The employer suspected as much but also thought, legitimately, that the employee often acted in a disruptive and dominant manner. *Id.* at 1039. To address this problem, the employer

---

on post-amendment law, *Stone & Webster,* stressed that the post-amendment ERA continues to protect only certain activities.

4. *See also Kansas Gas & Elec. Co. v. Brock,* 780 F.2d 1505, 1506 (10th Cir.1985) (protecting an

employee, a quality control inspector, who filed reports of continuous safety problems); *Mackowiak,* 735 F.2d at 1162 (protecting an employee who filed internal complaints and reported safety problems to NRC).

held a counseling session with the employee. The employee swore at his employer and refused to change his behavior. He dared the employer to fire him. Holding for the employer, the court noted that an "otherwise protected 'provoked employee' is not automatically absolved from abusing his status and overstepping the defensible bounds of conduct." *Id.* at 1041. The employee's cavalier attitude, abusive language, and defiant conduct justified his discharge. *Id.* at 1040–41. *See also Lockert v. United States Dep't of Labor,* 867 F.2d 513, 519 (9th Cir.1989) (employee's disobedience justified discharge, especially where he failed to establish disparate treatment or .that he had made an unusually large or serious number of complaints).

 Here, this court first must consider whether the ERA protects Sprague's conduct. A negative answer ends the analysis, because generally "an employer may fire an employee for any reason at all, so long as the reason does not violate a Congressional statute." *Kahn v. United States Secretary of Labor,* 64 F.3d 271, 280 (7th Cir.1995). ANR argues that Sprague's acts never amounted to an internal safety complaint, and that therefore Sprague's conduct should receive no protection. ANR asserts that the ERA protects only acts that allege a violation of nuclear regulatory laws. The government, on the other hand, argues that Sprague's questions about the RPs expressed a "particular safety concern" about the body count that was "tantamount to a complaint that the correct safety procedure was not being observed, and thus constituted protected activity." The Secretary of Labor, relying on *Bechtel,* found that Sprague's questions "constituted protected internal activities, since the RPs were responsible for Sprague's radiological safety as an ANR employee."

 Sprague's conduct falls outside the scope of ERA protection. His conduct lacks a sufficient nexus to safety concerns. Sprague did the following things that possibly implicate safety: he complained about "the stupid RP's not knowing what they were doing" after they waited too long to spray; he grew angry at the RPs while they administered his full body count test; and, after

the test, he asked the RPs for a copy of the body count, even though he received a more understandable exposure report.

Sprague, however, never alleged that ANR was violating nuclear laws or regulations. He never alleged that ANR was ignoring safety procedures or assuming unacceptable risks. He simply asked for a document, one that he had no right to receive and one that contained little useful information. The government contends that Sprague's general complaints about the RPs had larger safety implications, but the record refutes that position. While Sprague's complaints resulted in one set of additional body counts on the RPs, those tests ultimately revealed no safety problem or health hazard. Sprague's conduct never led anyone to change, probe, or even question ANR's safety procedures.

In cases where courts protected the employee's acts, the employee typically alleged a safety concern that was both concrete and continuing. For example, in *Stone & Webster,* the employee held weekly meetings about fire safety; in *Bechtel,* the employee complained about the procedures for handling radioactive tools; and in *Pogue,* the employee had prepared seven internal reports identifying specific safety problems. In contrast, Sprague complained about an isolated incident involving a wall spraying, not a procedural hazard. A single act or inquiry may, of course, fall under the ERA's scope, but that act must bear a closer nexus to safety than Sprague's conduct.

 Finally, even if the ERA does protect Sprague's conduct, ANR did not fire Sprague because he complained about safety. Emanuel testified that she fired Sprague because of his interpersonal problems. Sprague complained primarily about the RPs' incompetence, but the RPs did not work for ANR. No one could attribute the RPs' errors to ANR. Therefore, Sprague's complaints alleged no safety breach by ANR. Nothing in the record indicates how Sprague's conduct could force ANR to change its procedures or incur extra costs. An employer would hardly retaliate over.

such an insignificant sleight.[5]

REVERSED.

5. ANR also complains that the Secretary of La-
bor denied it due process and that the Secretary
failed to comply with a timeliness requirement.
Because we reverse, we need not address those
issues.