**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID W. SANDERS, *Plaintiff-Appellant*, <br><br> v. <br><br> ENERGY NORTHWEST, a Washington municipal corporation, *Defendant-Appellee*. | No. 14-35368 <br><br> D.C. No. 2:12-cv-00580-TOR <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted
November 17, 2015—Richland, Washington

Filed February 12, 2016

Before: Edward Leavy, Susan P. Graber,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Leavy;
Dissent by Judge Graber

## SUMMARY[*]

### Labor Law

Affirming the district court's summary judgment on a claim of whistleblower retaliation in violation of the Energy Reorganization Act, the panel held that the plaintiff did not engage in protected activity when he objected to the security level designation given to an internal "condition report" of a safety procedure violation concerning access badges.

Dissenting, Judge Graber wrote that the majority wrongly narrowed the scope of the Energy Reorganization Act by rejecting the whistleblower claim on the basis that the safety problems were not overlooked, neglected, or concealed by management and were not concrete and ongoing issues.

## COUNSEL

David Whedbee (argued), MacDonald Hoague & Bayless, Seattle, Washington, for Plaintiff-Appellant.

William G. Miossi (argued) and Matthew W. Lewis, Winston & Strawn LLP, Washington, D.C.; Angel D. Rains and Robert A. Dutton, Office of General Counsel, Energy Northwest, Richland, Washington, for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

OPINION

LEAVY, Senior Circuit Judge:

David W. Sanders appeals the grant of summary judgment to his former employer, Energy Northwest, on his claims of retaliation in violation 42 U.S.C. § 5851 of the Energy Reorganization Act ("the Act"). We have jurisdiction under 28 U.S.C. § 1291. We review de novo, *Keenan v. Allen*, 91 F.3d 1275, 1278 (9th Cir. 1996), and we affirm.

## I. Background

Energy Northwest is a Washington municipal corporation that owns and operates a nuclear power plant in Richland, Washington. Sanders was a maintenance manager whose responsibilities included overseeing maintenance contractors working at the power plant. Sanders also administered temporary staffing contracts for Energy Northwest. Energy Northwest terminated Sanders' employment in April, 2011, after nineteen years of employment. Energy Northwest maintains that it terminated Sanders after determining that he had improperly approved temporary staffing per diem and travel payments to the father of his daughter's child. Sanders maintains that he was terminated for protected behavior under the whistleblower retaliation provision of 42 U.S.C. § 5851. Namely, Sanders claims his objection to the severity level designation of an internal "condition report" constitutes protected activity under the Act.

A "condition report" is a report generated by employees when safety procedures may have been violated. Energy Northwest, as a Nuclear Regulatory Commission licensee, is required to maintain an internal system for documenting

potential safety violations.  *See* 10 C.F.R. § 21.21 (requiring the adoption of reporting procedures for noncompliance with safety standards, including evaluation and recordkeeping requirements).  Employees are encouraged to create condition reports on any issue perceived to pose safety concerns.  Once a condition report is created, a condition review group meets to determine the severity level of the report.  The condition review group is composed of managers in various departments.  This group reviews each condition report and assigns a severity level in decreasing order of severity: "Alpha," "Bravo," "Charlie," or "Delta," with Alpha requiring the most effort to review and correct.  The condition review group has latitude in its designation decisions.  After a severity designation is made, the condition report is reviewed in an operational focus meeting to ensure that remediation is properly undertaken.

Energy Northwest is also required to maintain an "access authorization program" to regulate access to its nuclear facility.    *See* 10 C.F.R. § 73.56 (personnel access authorization requirements for nuclear power plants).  Certain background checks and assessments are required before a worker is granted  unescorted access, and certain procedures are prescribed for cancellation of access privileges once a worker is terminated.  A worker who has been granted an unescorted access badge generally must turn in the badge within a prescribed time frame after his employment has been completed.

In October, 2010, Sanders learned that several contractors working in his maintenance department had completed their employment without turning in their access badges within the required time frame of seven days.  The maintenance department was cited in an internal condition report, which

was designated as a "Bravo." Sanders wanted his maintenance department to investigate and fix this problem. However, Bruce Peace, the then-head of the security department, wanted his department to investigate and fix this problem. After a heated discussion during the operational focus meeting, management told Pease and Sanders to resolve these differences outside the meeting. The next day, Sanders told management that he and Pease could not agree. Management sided with Sanders, allowing Sanders' maintenance group to investigate and remediate this issue.

About two weeks later, the security department received an internal condition report concerning one employee who was terminated without turning in his access badge within the seven-day time frame. The condition review group initially designated this condition report as a "Bravo." During the morning management meeting, Pease offered his opinion that this condition report should have a "Charlie" designation, and management agreed. Sanders, however, disagreed, and opined that this condition report should be designated a "Bravo." Management again asked Pease and Sanders to resolve their differences outside the meeting, but they again were unable to reach an agreement. The next day, Sanders told the plant manager, "Well, I don't agree with their standards. I believe that they're lower standards than what we're expecting from the plant. If you guys want to let it go as a Charlie, I'll let it go as a Charlie, but I'm not in agreement." Sanders maintains that this objection over the "Charlie" designation constitutes protected activity under the whistleblower protections of the Act.

On September 1, 2011, Sanders filed a whistleblower complaint with the Department of Labor. The Department of Labor failed to issue a final decision within one year, and

Sanders then filed a complaint in the district court. *See* 42 U.S.C. § 5851(b)(4) (allowing a complainant to bring an action in federal district court if the Department of Labor has not issued a final decision within one year of filing); *see also Tamosaitis v. URS, Inc.*, 781 F.3d 468, 477–78 (9th Cir. 2015) (explaining the operation of the opt-out provision). The district court granted summary judgment in favor of Energy Northwest on the ground that Sanders failed to establish a prima facie case of retaliation because his activity did not "rise to the level of protected activity under [the Act] or the associated case law." Sanders timely appealed.

## II. Retaliation Claim under the Act

The whistleblower retaliation provision of the Act, 42 U.S.C. § 5851,[1] protects energy workers who report or

---

[1] 42 U.S.C. § 5851 (a) Discrimination against employee:

(1) No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)–

(A) notified his employer of an alleged violation of this chapter or the Atomic Energy Act of 1954 (42 U.S.C. 2011 et seq.);

(B) refused to engage in any practice made unlawful by this chapter or the Atomic Energy Act of 1954, if the employee has identified the alleged illegality to the employer;

(C) testified before Congress or at any Federal or State proceeding regarding any provision (or proposed

otherwise act upon safety concerns.  The statute specifically prohibits employers from discharging or otherwise discriminating against employees for several enumerated acts, including notifying an employer of a violation, initiating an enforcement proceeding, or testifying in a safety or enforcement proceeding.  *See* 42 U.S.C. § 5851(a)(1)(A–E). The statute also includes a catch-all provision protecting employees "in any other action to carry out the purposes of this chapter . . . ."  *Id.* at § 5851(a)(1)(F).

To establish a prima facie case of retaliation under the Act, an employee must show that "(1) he engaged in a protected activity; (2) the respondent knew or suspected . . . that the employee engaged in the protected activity; (3) [t]he employee suffered an adverse action; and (4) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse

---

provision) of this chapter or the Atomic Energy Act of 1954;

(D) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or the Atomic Energy Act of 1954, as amended, or a proceeding for the administration or enforcement of any requirement imposed under this chapter or the Atomic Energy Act of 1954, as amended;

(E) testified or is about to testify in any such proceeding or;

(F) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other manner in such a proceeding or in any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended.

action." *Tamosaitis*, 781 F.3d at 481 (alternations in original) (internal quotation marks omitted). "Under the [Act's] burden-shifting approach to retaliation claims, if an employee shows that his participation in protected activity 'was a contributing factor in the unfavorable personnel action alleged,' the burden shifts to the employer." *Id.* (quoting 42 U.S.C. § 5851(b)(3)(C)). An employer can rebut the employee's prima facie case under the Act if it introduces "clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of [the employee's participation in] such behavior." 42 U.S.C. § 5851(b)(3)(D).

We have held that the Act serves a "broad, remedial purpose of protecting workers from retaliation based on their concerns for safety and quality." *Mackowiak v. Univ. Nuclear Sys., Inc.*, 735 F.2d 1159, 1163 (9th Cir. 1984). The Eleventh Circuit has noted that a broad interpretation is "appropriate" because it "promotes the remedial purposes of the statute and avoids the unwitting consequence of preemptive retaliation, which would allow the whistleblowers to be fired or otherwise discriminated against with impunity for internal complaints before they have a chance to bring them before an appropriate agency." *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 932-33 (11th Cir. 1995).

In *Bechtel*, an employee carpenter disagreed with his foreman about the safety procedures for measuring the amount of radioactive contamination of the carpentry tools. *Id*. at 929. The carpenter raised his concerns initially with his foreman, and then with the foreman's supervisor. *Id.* at 931. The Eleventh Circuit held that the carpenter's conduct qualified as protected activity, noting that he "did not merely make general inquiries regarding safety but, rather, he raised

particular, repeated concerns about safety procedures for handling contaminated tools." *Id.* The court also noted that "questioning one's supervisor's instructions on safety procedures [is] 'tantamount to a complaint.'" *Id.*

The Eleventh Circuit has also stated that "Section 5851 does not protect every act that an employee commits under the auspices of safety," and that "[w]histleblowing must occur through prescribed channels." *Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1574 (11th Cir. 1997). In *Stone & Webster*, Harrison, an employee ironworker, was responsible for holding a weekly safety meeting. *Id.* at 1570. Ironworkers had recently been assigned a new responsibility, ensuring fire safety. *Id.* At the weekly safety meeting, the ironworkers complained that this procedure was unsafe. *Id.* Harrison, as foreman, raised the safety issue with the company's fire marshal and also filed a complaint with the Nuclear Regulatory Commission. *Id.* at 1570–71. The Eleventh Circuit concluded, "If an employee talks about safety to a plant fire official, an employer and an industry regulator, he or she acts squarely within the zone of conduct that Congress marked out under 42 U.S.C. § 5851(a)(1)." *Id.* at 1573.

## III. Sanders' Conduct

Sanders maintains that his difference in opinion about the "Charlie" designation of a condition report was an objection to a specific practice, policy, or occurrence that he reasonably believed was a nuclear safety issue, similar to the employees' complaints in *Bechtel* and *Stone & Webster*. Sanders' conduct, however, is distinguishable. Unlike the carpenter and the ironworker employees who raised first-hand safety concerns with their supervisors, Sanders had no independent

knowledge of possible safety violations prior to the creation of the internal condition reports at issue. Sanders did not generate these condition reports. His employer, Energy Northwest, was already aware of the potential safety violations, and its internal process for remediation was underway.

The essence of Sanders' complaint concerned which department - maintenance or security - would take responsibility for the internal condition reports about access badges, and at what level of inquiry - "Bravo" or "Charlie." Sanders was given the responsibility for a "Bravo" condition report involving access badges for several maintenance contractors. Two weeks later, Pease was given responsibility for a "Charlie" condition report that involved the access badge of one terminated employee. Sanders objected to this "Charlie" designation, but ultimately "let it go as a Charlie." There is no suggestion in the record that because these condition reports were labeled a "Bravo" or a "Charlie," they would not be remedied in due course. Nor is there any suggestion of any safety concern that was overlooked, neglected, or concealed by management.

The designation process for condition reports involved the managers' collaborative opinions as to the assigned severity level. The record indicates that if two managers disagreed, they were asked to resolve their different opinions, and if they couldn't agree, other managers would assign the severity designation. Here, Sanders expressed a different opinion from a co-manager, then "let it go." Under these facts, Sanders' single expression of a difference of opinion about the "Charlie" designation of one existing internal condition report lacks a sufficient nexus to a concrete, ongoing safety concern. *See Am. Nuclear Res. Inc. v. U.S. Dep't. of Labor*,

134 F.3d 1292, 1296 (6th Cir. 1998) (employee never alleged that employer was ignoring safety procedures; employee complained about an isolated incident, not a concrete and continuing safety concern).

Because Sanders' conduct falls outside the scope of the Act's protection, the district court properly granted summary judgment.

Sanders moved to amend his complaint to include state-law disability and retaliation claims. This motion was made less than three weeks before the close of discovery and a year after filing the complaint. The district court did not abuse its discretion in denying the motion. *See Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." (internal quotation marks and brackets omitted)).

Because we affirm the district court's grant of summary judgment to Energy Northwest, we need not decide whether Sanders waived the jury trial issue by failing to include the correct order in his notice of appeal.

**AFFIRMED.**

GRABER, Circuit Judge, dissenting:

I respectfully dissent with respect to the claim of retaliation under the Energy Reorganization Act of 1974, 42 U.S.C. § 5851, on two grounds.[1]

*First*, the majority rejects Sanders' claim because the safety problems were not "overlooked, neglected, or concealed by management" and were not "concrete [and] ongoing" issues. Maj. op. at 10–11. But the statute does not require management to overlook, neglect, or conceal a safety issue before the protection against retaliation comes into play. Nor does the statute require the safety concern to be concrete and ongoing when the complaint is made.[2]  Section 5851(a)(1)(F) casts a wide net; it forbids discrimination against an employee who engages "in *any* other action to carry out the purposes of this chapter." (Emphasis added.) *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926 (11th Cir. 1995) (holding that the plaintiff's complaint that procedures the employer was using to handle an already identified safety risk was protected activity).

---

[1] I concur in the portion of the opinion that affirms the district court's ruling on the motion to amend the complaint.

[2] Indeed, the Sixth Circuit case that the majority cites, in support of the "concrete [and] ongoing" standard, notes that "concrete and continuous" are not requirements, but only characteristics "typically" found in acts covered by the statute. *Am. Nuclear Res., Inc. v. U.S. Dep't of Labor*, 134 F.3d 1292, 1296 (6th Cir. 1998). The opinion goes on to emphasize that "[a] single act or inquiry may, of course, fall under the [Energy Reorganization Act's] scope," so long as it bears a close nexus to safety. *Id.*

The majority is wrong to narrow the scope of the statute. The majority fails to follow *Mackowiak v. University Nuclear Systems, Inc.*, 735 F.2d 1159, 1163 (9th Cir. 1984), which held that the statute serves the "broad, remedial purpose of protecting workers from retaliation based on their concerns for safety and quality." In my view, insisting on a faster or more complete solution to a safety problem about which the employer is aware plainly falls within the terms of the statutory "catch-all," as well as the purpose of the law. In short, Sanders engaged in protected activity.

*Second*, the majority improperly resolves factual issues against the non-moving party, Sanders. The district court granted summary judgment to the employer. Accordingly, on de novo review we must construe all facts in favor of Sanders. *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1429 (9th Cir. 1995).

The majority states that, although Sanders initially objected to the "Charlie" designation because he believed that the safety problem deserved a "Bravo" designation requiring faster and more complete action, he ultimately "let it go as a Charlie." Maj. op. at 10. That characterization tells only half the story. Sanders told the plant manager:

> Well, I don't agree with their standards. I believe that they're lower standards than what we're expecting from the plant. If you guys want to let it go as a Charlie, I'll let it go as a Charlie, but I'm not in agreement.

Thus, Sanders began by stating his disagreement and ended by emphasizing his disagreement. A better reading of this statement to the plant manager is that Sanders gave up trying

to change the outcome, but strongly maintained his complaint that the facility was not living up to appropriate safety standards.  A reasonable jury could find that the dispute over the condition report was protected activity.

Additionally, a reasonable jury could find that this activity was a contributing factor in Sanders' termination and that the reason given was pretextual.  *See Tamosaitis v. URS Inc.*, 781 F.3d 468, 481 (9th Cir. 2015) (describing elements of proof and burden-shifting; holding that protected activity need only be a contributing factor in the unfavorable personnel action).  For example, Pease confronted Sanders over the policy change and threatened:  "That's twice and I owe you one."   The timing of the investigation also is suspect, as is Pease's involvement and his testimony that contradicted Atkinson's testimony.

For the foregoing reasons, I would reverse the grant of summary judgment on Sanders' retaliation claim.  I dissent from the majority's contrary holding.