**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0254n.06

Case No. 15-2105

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 10, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MARY MA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| AMERICAN ELECTRIC POWER, INC., a | ) | |
| corporation, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GUY, BOGGS, and COOK, Circuit Judges.

COOK, Circuit Judge. Mary Ma sued her former employer, American Electric Power, Inc. (AEP), alleging wrongful termination in retaliation for protected activity. The district court concluded that AEP terminated Ma for her behavioral problems. Ma appeals, arguing the district court erred in its conclusion and abused its discretion by imposing rigid time limits at trial. Disagreeing, we AFFIRM.

I.

Ma's engineering talents garnered her recognition for maintaining safety at AEP over her eleven-year career. But interpersonal conflict ultimately overshadowed her technical prowess. Issues came to a head in 2010 when two AEP employees—an engineer, Greg Hill, and a supervisor, Keith Steinmetz—accused Ma's work group of misconduct. Two months later, Ma

wrote an internal safety complaint accusing Steinmetz's group of illegal activity. Tempers flared and workflow slowed, culminating in a verbal altercation between Ma and Steinmetz. Ma then filed a safety concern with AEP claiming Steinmetz yelled at her in retaliation for writing the condition report.

Troubled by the engineering department's increasing dysfunction, AEP's Vice President, Mike Carlson, called meetings with Ma, Steinmetz, and Hill to discuss teamwork and professionalism. Immediately after her meeting with Carlson, however, Ma sent a hostile email to a number of colleagues criticizing Hill's competence. That prompted Carlson again to consult Ma and orally advise her to alter her behavior. But confrontations persisted, and AEP issued Ma a formal discipline order. At a related disciplinary meeting, Ma's combative demeanor led a human-relations specialist to refer her to mandatory employee counseling.

Following the counseling, AEP tasked Ma and other engineers with resolving a technical issue on what was termed the "LOTIC2" project. But when AEP selected a proposal other than the one Ma supported, she pugnaciously claimed that the adopted proposal was unsafe and refused to work on it. Carlson believed Ma's recalcitrance was unrelated to safety, seeing it instead as a continuation of her pattern "us-them" mentality. He recommended Ma's termination to the senior management team, who agreed and fired her.

Ma filed a complaint with the United States Secretary of Labor alleging wrongful termination under the Energy Reorganization Act, 42 U.S.C. § 5851. A year passed without a determination, and Ma filed this action. *See id.* § 5851(b)(4). The parties conducted extensive discovery, and the court entered an order that limited each side to eleven hours at trial. After a five-day bench trial, the court determined that AEP terminated Ma not in retaliation for protected activity, but because of her interpersonal and professional shortcomings. This appeal followed.

II.

Ma asserts the district court (A) erred in finding that AEP met its burden of showing it would have terminated her regardless of the safety objections she raised, and (B) abused its discretion by enforcing rigid trial time limits.

*A. AEP's Burden*

The Energy Reorganization Act protects workers who report safety concerns from retaliatory termination. *See* 42 U.S.C. § 5851(a). To this end, the Act places an initial burden on employees to offer preponderating evidence that protected activity contributed to an adverse employment action; if the employee succeeds, the burden shifts to the employer to show by "clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of such behavior." *See id.* § 5851(b)(3); *see also Sanders v. Energy Nw.*, 812 F.3d 1193, 1197 (9th Cir. 2016). "The employer bears the risk if the two motives prove inseparable." *Am. Nuclear Res., Inc. v. U.S. Dep't of Labor*, 134 F.3d 1292, 1295 (6th Cir. 1998) (citing *Mackowiak v. Univ. Nuclear Sys., Inc.* 735 F.2d 1159, 1164 (9th Cir. 1984)).

Here, the district court determined that Ma set forth a prima facie case of retaliatory termination because her 2010 condition report and opposition to the LOTIC2 solution constituted protected activities that played a role in her termination. Pivoting, the court concluded that AEP carried its burden of showing it would have terminated Ma even absent these activities because of her enduring difficulties with coworkers.

Following a bench trial, we review the district court's legal conclusions de novo and its factual findings for clear error, giving due regard to the trial court's opportunity to judge the witnesses' credibility. *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673–74 (6th Cir. 2008).

Ma challenges the district court's conclusion that AEP met its burden, maintaining that because only a subset of the senior management team testified, it was impossible for the court to discern AEP's true reason for terminating her. Although she aptly notes that an employer must present evidence of its actual rather than hypothetical motivations, *see Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor*, 992 F.2d 474, 482 (3d Cir. 1993), Ma points to no authority necessitating that all decisionmakers testify. Instead, the statute requires AEP provide "clear and convincing" evidence of its motivations. *See* 42 U.S.C. § 5851(b)(3)(B). Here, the consistent testimony from multiple decisionmakers provided sufficient evidence from which the district court could glean AEP's reason for firing Ma.

Even if this management-team testimony were sufficient, Ma continues, the court erred in finding that AEP distinguished its legitimate rationale from its prohibited rationale. She likens her case to *Mackowiak v. University Nuclear Systems, Inc.*, in which the court of appeals acknowledged substantial evidence of an employee's interpersonal trouble with coworkers and superiors, but could not decipher the extent to which this troublesomeness arose from his engaging in protected activity. 735 F.2d at 1164. The court of appeals remanded the case for further proceedings. *Id.*

Ma's case differs starkly. Here, it was not Ma's safety reports and LOTIC2 objections that irked colleagues, but rather the aggressive tone with which she delivered them. And testimony showed that colleagues avoided going to Ma with concerns because of her confrontational attitude and unwillingness to accept criticism. AEP elicited sufficient testimony on these points to support the district court's conclusion that Ma's inability to talk, collaborate, or otherwise work with peers caused her termination. *See Am. Nuclear Res., Inc.*, 134 F.3d at

1295 ("[A]n employer may terminate an employee who behaves inappropriately, even if that behavior relates to a legitimate safety concern.").

Pushing on, Ma contends that the district court erroneously discounted her positive performance reviews, overlooked hostility she experienced from certain colleagues, and accepted disputed testimonial evidence. The court adequately addressed and reconciled these points, and we will not reweigh evidence. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). As for the disputed testimony, the court explained that Ma's "frozen" and "dodg[y]" demeanor on the witness stand "presented exactly what her detractors said—she was unable or unwilling to see or allow for potential error on her side of the conflict." Findings based on a witness's credibility during a bench trial demand increased deference, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575 (citing *Wainwright v. Witt*, 469 U.S. 412 (1985)). And though "a district court cannot 'insulate [its] findings from review by denominating them credibility determinations,'" here the record buttresses the court's determination. *King v. Zamiara*, 680 F.3d 686, 701 (6th Cir. 2012) (quoting *Anderson*, 470 U.S. at 575).

Last, Ma objects to a number of the district court's subsidiary findings, including its description of AEP's safety-and-disciplinary culture and its unwillingness to credit adverse inferences. But these purported errors leave intact the court's underlying finding that AEP fired Ma because of her behavioral problems and insubordination, rather than in retaliation for protected activity.

### B.  Trial Time Limits

Ma alleges that the district court prejudiced her by inflexibly enforcing time limits at trial.  District courts enjoy broad discretion in placing limits on the presentation of evidence, and we disturb such decisions only for an abuse of discretion.  *See Sutkiewicz v. Monroe Cty. Sheriff,* 110 F.3d 352, 361 (6th Cir. 1997).

Ma fails to demonstrate that the court abused its discretion in scheduling each side eleven hours of trial time.  Though it permitted but modest extensions for cross-examination, the court noted that excessive and duplicative evidence spurred its adherence to the allotted time.  *See* Fed. R. Evid. 403, 611(a).  "[A] judge has special latitude in applying time limits in a bench trial, since the court often has become familiar with the case long before trial begins and can readily comprehend the evidence presented."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008) (citing *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996)).

III.

For these reasons, we AFFIRM.