RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SPA RENTAL, LLC, dba MSI Aviation,

　　　　　　　　　　　　　　　　　　　*Petitioner*,

*v.*

No. 16-3989

SOMERSET-PULASKI COUNTY AIRPORT BOARD;
FEDERAL AVIATION ADMINISTRATION,

　　　　　　　　　　　　　　　　　　　*Respondents*.

───────────────

On Petition for Review from the Federal Aviation Administration;
No. 16-13-02.

Argued: January 31, 2018

Decided and Filed: March 7, 2018

Before: SUHRHEINRICH, SUTTON, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Winter R. Huff, ATTORNEYS SERVICES OF KENTUCKY, PLLC, Monticello, Kentucky, for Petitioner. Bethany A. Breetz, STITES & HARBISON PLLC, Louisville, Kentucky, for Respondent Somerset-Pulaski. Thais-Lyn Trayer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C, for Respondent Federal Aviation Administration. **ON BRIEF:** Winter R. Huff, ATTORNEYS SERVICES OF KENTUCKY, PLLC, Monticello, Kentucky, Konrad Kuczak, Dayton, Ohio, for Petitioner. Bethany A. Breetz, STITES & HARBISON PLLC, Louisville, Kentucky, for Respondent Somerset-Pulaski. Thais-Lyn Trayer, Alisa B. Klein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C, for Respondent Federal Aviation Administration.

---

**OPINION**

---

JOHN K. BUSH, Circuit Judge.  This case raises the question of what constitutes "unjust discrimination," and related issues, under certain "standard grant assurances" required of airport sponsors by 49 U.S.C. § 47101 *et seq.* and regulations promulgated thereunder by the Secretary of Transportation and implemented by the Federal Aviation Administration ("FAA").  SPA Rental, LLC ("SPA"), a limited fixed-base operator ("LFBO") engaged in the business of refurbishing and reselling aircraft, petitions for review of an FAA ruling arising from a lease dispute regarding two hangars SPA occupies at the federally funded Lake Cumberland Regional Airport ("Airport") in Kentucky.  The Airport is operated by the Somerset-Pulaski County Airport Board ("Board") and sponsored by Somerset County.  SPA contends that the County, through the Board, is required to extend to SPA the same benefits given to non-party Somerset Regional Aviation, LLC ("Somerset"), an aircraft maintenance service provider, as part of Somerset's lease at the Airport.  The FAA disagreed.  We affirm the FAA's determination and deny SPA's petition for review.

**I**

Airports receiving federal funding must make certain "standard grant assurances" that implement the requirements set forth in 49 U.S.C. § 47101 *et seq.*  These are binding obligations between the airport sponsor—in this case, Somerset County—and the federal government.  Three grant assurances are relevant here:  22, 23, and 24.  Grant Assurance 22 requires an airport sponsor to "make the airport available . . . for public use . . . without unjust discrimination to all types, kinds and classes of aeronautical activities" and to subject fixed-base operators "to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-base operators making the same or similar uses of such airport and using the same or similar facilities."  FAA Order 5190.6B, app. A, at 10 (Sept. 30, 2009); *see also* 49 U.S.C. § 47107(a)(1), (5).  Grant Assurance 23 prohibits the airport sponsor from granting exclusivity to any one aeronautical-services provider.  FAA Order 5190.6B, app. A, at 11; *see also* 49 U.S.C. §§ 40103(e), 47107(a)(4).  Finally, Grant Assurance 24 requires the airport

sponsor to "maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible." FAA Order 5190.6B, app. A, at 11; *see also* 49 U.S.C. § 47107(a)(13)(A).

Any commercial entity wishing to conduct an "aeronautical activity" at the Airport is provided a copy of the Airport's "Minimum Standards for Fixed Base Operation." The FAA highly recommends adoption of such optional standards in order to decrease the likelihood of a violation of a grant assurance or other obligation to the federal government.

The Airport's minimum standards establish the requirements for providing commercial aeronautical services at the Airport. Section 4 of the minimum standards sets forth requirements for all operators. Section 5 provides requirements for "general," rather than "limited," fixed-base operators. And Section 6 details requirements for different, specific, aeronautical services. Of particular relevance here, Section 6 contains one set of requirements for operators providing aircraft maintenance and a different set for those providing aircraft sales.

SPA has operated at the Airport as an LFBO since 1986. The managing director of SPA is Walter Iverson, who is an aircraft maintenance technician. SPA leases two hangars, which store three aircraft owned by Iverson and his spouse. SPA formerly provided maintenance services at the Airport. But now SPA, as it describes itself, is only "in the business of purchasing, refurbishing, and re-selling aircraft." Critically, it does not provide maintenance services to the general public or to third parties.

At the end of 2011, the Board notified SPA of its intent to let SPA's lease and LFBO agreements expire. The Board also determined that there was an unmet need for maintenance services at the Airport, so it solicited bids from third-party maintenance service providers. SPA did not bid, but two bidders emerged. These bidders demanded certain incentives should the Board decide to engage their services. The Board picked Somerset, executing a lease and an LFBO agreement with it on March 24, 2012. Under those agreements, the Board agreed to pay up to $8000 of the cost of Somerset's public liability insurance, forgo receiving rent payments, and charge only a $1 LFBO fee.

In response to the deal reached between the Board and Somerset, SPA filed an informal complaint with the FAA on April 19, 2012, arguing that the Board offered "discriminatory incentives to Somerset to the detriment of SPA" and complaining about the Board's refusal to renew SPA's LFBO agreement. Upon investigation, the regional FAA district office determined that the Somerset contract was unsustainable, putting it in violation of Grant Assurance 24, under which an airport must maintain a fee structure that will make it as self-sustaining as possible. So the FAA required the Airport to amend its contract with Somerset.

In response, the Board conditioned the receipt of the incentives on Somerset's performing at least ten aircraft inspections each year, thereby making the contract more economically viable for the Airport. The Board amended its LFBO and lease agreements with Somerset accordingly and amended the Airport's minimum standards to reflect these conditions as well. The Board also agreed to terminate its agreement with Somerset after one year and to solicit new bids at that time. The FAA approved these amendments.

After these events, SPA asked the Board to allow it to remain in operation at the Airport "on fair and equal terms." In October 2012, the Board sent SPA proposed lease and LFBO agreements with the same terms as Somerset's agreements, essentially giving SPA the opportunity to stay on if it agreed to provide maintenance services. But Iverson asked for the ability to lease personally one of the hangars, and the County refused. On November 29, 2012, the Board again notified SPA that it would not be renewing their lease and LFBO agreements. SPA's agreements thus expired on December 31, 2012, but it refused to vacate and continues to occupy the two hangars.

**II**

On March 27, 2013, SPA filed a formal complaint with the FAA. It alleged that it should be allowed to receive the same incentives as Somerset and argued that the Board violated Grant Assurances 22, 23, and 24. Meanwhile, SPA proposed new lease and LFBO agreements to the Board. Under these proposals, SPA would receive the same incentives as Somerset without having to perform the ten annual inspections. The Board refused.

The Director of the FAA Office of Airport Compliance and Management Analysis issued a Director's Determination on September 1, 2015. The Director found for the Board, explaining that "[t]he principle of unjust economic discrimination requires a party who has been allegedly discriminated against to be 'similarly situated' to an alleged preferred party in order to establish unjust discrimination under [Grant] Assurance 22." SPA appealed to the Associate Administrator for Airports at the FAA. In that appeal, SPA focused on Grant Assurance 24 and advanced two primary arguments. It argued specifically that the Board discriminated against it when the Board amended Somerset's LFBO and lease agreements and the Airport's minimum standards. It also argued more generally that the proper standard to determine unjust discrimination is not whether similarly situated entities are treated differently, but whether the same standards are applied to dissimilar entities.

The Associate Administrator also found for the Board. He explained that changing the minimum standards to include the incentive structure was "not only justified, but necessary" in light of Grant Assurance 22's requirements to "impose such additional reasonable restrictions or conditions on operations from time to time [as the Board] may deem to be necessary in order to ensure the efficient operation of the airport." Noting that SPA and Somerset "are users with differing circumstances"—an aircraft dealer and a maintenance service provider, respectively— the Associate Administrator held that it was permissible for the Board to have different lease terms and minimum standards for SPA and Somerset. Therefore, according to the Associate Administrator, the "Board did not discriminate in favor of Somerset to the detriment of SPA" when it amended the lease, LFBO agreement, and minimum standards.

The Associate Administrator also held that SPA "misapplied the standard required to determine if a violation of Grant Assurance 22 has occurred," explaining that the minimum standards must apply uniformly to entities similarly situated but that no unjust discrimination occurs when dissimilar entities are treated differently. Because the minimum standards regarding the incentive program applied only to maintenance service providers, and because SPA was not a maintenance service provider, the Associate Administrator concluded that the Director did not err when he held that the minimum standards complied with the grant assurances.

SPA timely petitioned us for review of that decision.  It presents the same arguments: that the amendments to the minimum standards, and the Board's subsequent application of them, unjustly discriminated against it.  As discussed, the Director and Associate Administrator with the FAA both disagreed with SPA.  For the reasons that follow, we affirm the FAA's decision.

**III**

The FAA's findings of fact supported by substantial evidence are conclusive.  *See Wilson Air Ctr., LLC v. FAA*, 372 F.3d 807, 812–13 (6th Cir. 2004) (citing 49 U.S.C. § 46110(c)).  The Federal Aviation Act does not address the standard for reviewing nonfactual findings, so we look to the Administrative Procedure Act.  *Id.* (citing *Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 717 (1st Cir. 1999)).  We review questions of law de novo, but we defer under *Chevron* if statutory language is ambiguous.  *See Am. Nuclear Res., Inc. v. U.S. Dep't. of Labor*, 134 F.3d 1292, 1294 (6th Cir. 1998) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).  Here, the term "unjust discrimination" is not ambiguous, but in any event, we agree with the FAA's interpretation of the term.

SPA challenges the amendments to the minimum standards (and to Somerset's lease and LFBO agreements) that added the ten required annual maintenance inspections in order to receive the contractual incentives, arguing that the amendments unjustly discriminate against it.  But unlike Somerset, SPA does not provide third-party maintenance services.  The Board offered SPA the opportunity to do so and join in on the incentive program made available to Somerset and other maintenance providers.  SPA declined.  The requirements in the amendments therefore do not apply to SPA.  And because of the inherent differences between SPA and Somerset, the Board did not treat similarly situated entities differently.  So no unjust discrimination based on the amendments occurred here.[1]

---

[1]SPA argues alternatively that unjust discrimination occurred because the amendments to the minimum standards required SPA to maintain a minimum of 3200 square feet of hangar space.  But this square-footage requirement comes from Section 5 of the minimum standards, which applies only to general fixed-base operators and not to limited fixed-base operators like SPA.  Section 6 requires service providers such as SPA also to comply with the requirements of Section 4.  But no specific square-footage requirement is present in Section 4's "Standard Requirement[s] for All Operators" nor is one present in Section 6's requirements for specific service providers.  So this argument fails as well.

SPA concedes that it is dissimilar to Somerset but argues that unjust discrimination occurs when the same standards are applied to dissimilar parties. The FAA disagreed, concluding that the proper standard is whether similarly situated entities receive disparate treatment. We agree with the FAA. It is informed directly by the text of Grant Assurance 22:

> [The Airport Sponsor must] make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport. . . . Each fixed-base operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-base operators *making the same or similar uses of such airport and using the same or similar facilities*."

FAA Order 5190.6B, app. A, at 10 (emphasis added). The federal statute implemented by Grant Assurance 22 likewise requires that "fixed-base operators *similarly using* the airport will be subject to the same charges." 49 U.S.C. § 47107(a)(5) (emphasis added).

Moreover, we have previously upheld this same standard in similar cases. For example, in *R/T 182, LLC v. FAA*, we agreed with the FAA that unjust discrimination requires "a showing that a party similarly situated to the complainant was treated preferentially." 519 F.3d 307, 309 (6th Cir. 2008); *see also Wilson Air Ctr.*, 372 F.3d at 819 ("Simply put, the buildings were not similarly situated. . . . [49 U.S.C. § 47107(a)(1)] prohibits only *unjust* discrimination, not all discrimination in rates."); *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1544–45 (11th Cir. 1985) (holding airport's proposed lease terms to one party must be reasonable relative to the terms in similar leases of other similarly situated parties). So the proper standard for unjust discrimination, as applied by the FAA, is whether similarly situated parties have been treated differently. SPA is not situated similarly to Somerset. So the Board did not unjustly discriminate against SPA.

We **AFFIRM** the FAA's final determination and deny the petition for review.